Docket Nos. 104022, 104035 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

*In re* MARRIAGE OF LENORA ANN MILLER, Appellant, and HAROLD E. MILLER (H.E. Miller, Sr., Appellee; Lisa Madigan, Attorney General, Appellant).

*Opinion filed November 29, 2007.*

JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

At issue in this appeal is whether the penalty provision contained in section 35(a) of the Income Withholding for Support Act (Withholding Act) (750 ILCS 28/35 (West 2004)), as applied to an employer who knowingly failed to turn over child support payments withheld from his employee's wages in a timely manner, violates the employer's substantive due process rights. The circuit court of Cook County rejected the employer's constitutional challenge and applied the statutory $100-per-day penalty, entering judgment against the employer in the amount of $1,172,100. The appellate court reversed the judgment of the circuit court, holding that the statutory penalty,

as applied in this case, was unconstitutionally severe. 369 Ill. App. 3d 46, 51.

We reverse the judgment of the appellate court and affirm the judgment of the circuit court.

## BACKGROUND

On May 1, 2001, the circuit court of Cook County entered a judgment dissolving the marriage of Lenora Ann Miller and Harold E. Miller. The judgment incorporated the parties' marital settlement agreement under which Lenora was granted custody of the couple's only child and Harold was required to pay child support. The support order, entered the same day, set child support in the amount of $82 per week. In accordance with the support order, a "Notice to Withhold Income" issued immediately to Harold's employer–his father, H.E. Miller, Sr., an architect. The notice, which was delivered by certified mail to Miller on May 8, 2001, advised Miller that he was required by law to deduct $82 from Harold's weekly income and forward the same, within seven business days of the pay date, to the State Disbursement Unit (SDU) in Wheaton, Illinois. The reverse side of the notice contained additional information in several numbered paragraphs. Relevant here is paragraph 6:

> "LIABILITY: If you fail to withhold income as the NOTICE directs, you are liable for both the accumulated amount you should have withheld from the employee's/obligor's income and any other penalties set by State law. You may be found liable for the total amount which you fail to withhold or pay over and fines up to $100.00 per day for each day after the 7 day grace period."

Although Miller withheld the required support from Harold's wages, Miller did not timely forward the same to the SDU. Thus, on October 12, 2001, Lenora's attorney sent a letter to Miller regarding 19 missing support payments totaling $1,558. The letter reminded Miller of the statutory penalty for late payments, quoting the relevant statutory provision, and further stated, "While it is not the intent of my client to pursue penalties at this time, she does require this money to live. Therefore, timely payments are mandatory. I must require that you bring the payments current by way of immediate payment of

-2-

$1,558.00 to Lenore [*sic*] Miller." Miller eventually turned over the missing payments, but failed to stay current.

On February 28, 2002, Lenora filed a motion in the circuit court seeking to add Miller as a third-party defendant in the dissolution of marriage proceeding. The circuit court granted the motion on March 28, 2002, and on the same date, Lenora filed a complaint against Miller for unpaid child support and statutory penalties. According to the complaint, Miller had failed to pay over to the SDU 25 weeks of child support totaling $2,050. Miller was personally served the complaint on April 12, 2002, but failed to file an answer or otherwise plead. Sixteen months later, on Lenora's motion, the circuit court found Miller in default and set the matter for prove-up on August 28, 2003. On that date, Miller's counsel filed his appearance. The circuit court allowed Miller 30 days to answer the complaint. No answer was filed.

The parties next appeared in court on November 5, 2003. The circuit court granted Miller leave to file his answer on before January 7, 2004. The circuit court also ordered Miller "to remain current in his payment of child support withholding." Miller did not file an answer and did not bring the child support payments up to date.

On January 16, 2004, Lenora filed a petition for rule to show cause. Lenora alleged that Miller, in violation of the court's order of November 5, 2003, failed and refused to submit child support withholding payments to the SDU for the 12-week period beginning October 27, 2003. Lenora sought payment of the arrearage ($984), as well as statutory penalties ($39,500).

On January 29, 2004, the circuit court granted Miller a 60-day extension to March 30, 2004, to answer Lenora's complaint and again ordered Miller to remain current with child support withholding payments.

Miller filed his answer on April 1, 2004, two years after Lenora had filed her complaint. In his answer, Miller admitted that he withheld $82 per week from Harold's paycheck, and that he "fell behind on sending in the child support payments from the very beginning in May, 2001." Although Miller claimed, in his answer, that he was then current with child support payments, an agreed stipulation

later entered by the parties demonstrates that this was not the case and that Miller was actually 10 weeks in arrears.

In his answer, Miller raised two affirmative defenses. He argued first that Lenora was guilty of *laches* in enforcing the statutory penalties, *i.e.*, that she was dilatory in filing her complaint. Miller also claimed that the October 12, 2001, letter from Lenora's counsel, stating that it was not his client's intention to pursue penalties at that time, "lulled" him into a "sense of security." Miller stated that, in reliance on that letter, he continued to make lump-sum payments rather than weekly payments, believing that Lenora would never attempt to enforce any statutory penalties against him.[1]

As his second affirmative defense, Miller argued that the Withholding Act was unconstitutional as applied to him, depriving him of his due process rights under both the federal and state constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2). Miller claimed the statute was confiscatory because the penalty is not commensurate with the offense and not related in any way to the dollar amounts withheld for child support. Miller noted that, as of March 31, 2004, the total support withheld was $12,382, but that Lenora was attempting to collect a penalty from him of over $1 million.

Lenora moved to strike Miller's affirmative defenses. As to the *laches* defense, Lenora argued that no reasonable person would have believed the October 12, 2001, letter indicated an intent never to seek statutory penalties, but that any misapprehension would have dissolved when Miller was served with the summons and complaint. Lenora noted that over $700,000 of the penalties she sought accrued *after* service of summons, and that additional penalties accrued even after the circuit court ordered Miller to remain current. Lenora also argued that she diligently pursued her claim against Miller, filing her complaint less than 11 months after the original child support order was entered. Finally, Lenora argued that the court should consider the family relationship–Miller is Lenora's former father-in-law, and the

---

[1]To the extent Miller's answer suggests that he made regular lump-sum payments, the record indicates otherwise. Miller's lump-sum payments were sporadic, covering periods as short as 4 weeks and as long as 40 weeks.

child support withholding is for the support of Miller's own granddaughter–and the consequent hesitation to litigate.

As to Miller's constitutional challenge to the statute, Lenora argued that the $100-per-day penalty bears a reasonable relationship to a proper legislative purpose and is not harsh because it applies only to knowing violations of the statute. Lenora also argued that the burden to Miller under the statute was slight, and the magnitude of the penalty was the result solely of Miller's own outrageous and indefensible conduct.

Prior to resolution of Lenora's motion to strike, Lenora filed a second petition for rule to show cause. Lenora claimed that, in disregard of the court's orders of November 5, 2003, and January 29, 2004, Miller failed to remit any child support withholding for the period beginning May 3, 2004, to the date of her petition, July 15, 2004.

On August 12, 2004, the circuit court granted Lenora's motion to strike Miller's affirmative defense challenging the constitutionality of the statute. The circuit court also struck Miller's *laches* defense, but only for the period following the filing of Lenora's complaint. Thereafter, the matter was continued from time to time for prove-up of the statutory penalties claimed by Lenora.

On October 4, 2004, Lenora and Miller filed an agreed stipulation of facts. The parties stipulated that for the period from April 15, 2002 (after Miller was served with the complaint), to October 4, 2004, the amount of penalties which accrued to Miller due to his delinquency in forwarding withheld child support payments to the SDU was $1,172,100. The parties also stipulated to the accuracy of an attached spreadsheet which details the date each withholding payment was due; whether the payment was mailed to the SDU and, if so, the date of mailing; and the number of days, if any, each payment was overdue. The spreadsheet indicates that for the 128 weeks at issue, Miller mailed the withheld child support in a timely fashion on only three occasions, and that, as of October 4, 2004, Miller was 15 weeks in arrears. The spreadsheet also indicates that payments were mailed anywhere from a day late to as many as 299 days late.

On October 26, 2004, the circuit court entered judgment in favor of Lenora and against Miller in the stipulated penalty amount of

$1,172,100 based on Miller's "knowing failure to forward withheld child support payments." The circuit court denied Miller's motion for rehearing and to vacate the judgment. Miller appealed.

The appellate court, with dissent, reversed the judgment of the circuit court. 369 Ill. App. 3d 46. The majority acknowledged that the $100-per-day penalty, on its face, rationally advances the state's legitimate interest in encouraging the prompt payment of child support, but nonetheless concluded that the penalty imposed against Miller violated his substantive due process rights. The appellate court explained that the gross disparity between the judgment here and the $25,000 maximum fine for a parent's willful failure to pay child support (see 750 ILCS 16/15(d) (West 2004)) demonstrates that the $1,172,100 penalty is wholly disproportionate to Miller's offense and obviously unreasonable. 369 Ill. App. 3d at 51. Although the appellate court reversed the circuit court judgment, the appellate court recognized that Miller's conduct was "hardly exemplary" and justified a penalty. 369 Ill. App. 3d at 51. Thus, the appellate court remanded the matter to the circuit court with directions to hold a hearing to determine an appropriate penalty. 369 Ill. App. 3d at 51. The appellate court gave no further direction to the circuit court as to how the penalty should be computed.

The dissenting justice agreed that the penalty was harsh, but noted that "Miller invited it by his indifference to his legal obligations. He virtually created his own due process issue." 369 Ill. App. 3d at 54 (Wolfson, P.J., dissenting). The dissenting justice also disagreed that the circuit court could, under the statute, fashion a different penalty. 369 Ill. App. 3d at 53 (Wolfson, P.J., dissenting).

We allowed the Attorney General of Illinois leave to intervene, and allowed the petitions for leave to appeal filed by Lenora and the Attorney General (collectively, petitioners). 210 Ill. 2d R. 317. Their petitions have been consolidated for review.


ANALYSIS

Section 35(a) of the Withholding Act (750 ILCS 28/35(a) (West 2004)) sets forth the obligations of employers, like Miller, who have been served with an income-withholding notice, and states in relevant part:

"It shall be the duty of any payor who has been served with an income withholding notice to deduct and pay over income as provided in this Section. The payor shall deduct the amount designated in the income withholding notice, *** beginning no later than the next payment of income which is payable or creditable to the obligor that occurs 14 days following the date the income withholding notice was mailed ***. The payor shall pay the amount withheld to the State Disbursement Unit within 7 business days after the date the amount would (but for the duty to withhold income) have been paid or credited to the obligor. *If the payor knowingly fails to withhold the amount designated in the income withholding notice or to pay any amount withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor, then the payor shall pay a penalty of $100 for each day that the amount designated in the income withholding notice (whether or not withheld by the payor) is not paid to the State Disbursement Unit after the period of 7 business days has expired.* The failure of a payor, on more than one occasion, to pay amounts withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor creates a presumption that the payor knowingly failed to pay over the amounts. This penalty may be collected in a civil action which may be brought against the payor in favor of the obligee or public office. *** For purposes of this Act, a withheld amount shall be considered paid by a payor on the date it is mailed by the payor ***." (Emphasis added.) 750 ILCS 28/35(a) (West 2004).

The $100-per-day penalty is assessed for each violation of the Withholding Act. "A separate violation occurs each time an employer knowingly fails to remit an amount that it has withheld from an employee's paycheck." *Grams v. Autozone, Inc.*, 319 Ill. App. 3d 567, 571 (2001). To illustrate: If an employee is paid weekly, and the employer fails to remit child support withheld from the employee's paycheck in week one, the employer is subject to a penalty at the rate of $100 per day. If the employer also fails to remit the next support

payment withheld in week two, and the first payment is still outstanding, the employer is subject to two $100 penalties each day that both payments remain outstanding. See *Grams*, 319 Ill. App. 3d at 571. Here, because Miller was frequently several weeks in arrears, he was subject to numerous $100 penalties on any given day–one for each support payment he had failed to remit. This explains how, over the course of 2½ years, Miller was able to accumulate 11,721 penalties, ultimately resulting in a judgment against him in the amount of $1,172,100.

Petitioners argue that, notwithstanding the size of the judgment, application of the statutory penalty to Miller does not violate his due process rights. Petitioners note that Miller alone was responsible for the extent of any penalties, and maintain that the judgment was reasonable and proportional to Miller's conduct. Petitioners further argue that the appellate court erred by focusing on the judgment amount, rather than the daily penalty amount of $100, and that the appellate court judgment undermines the purpose of the statutory penalty–to ensure timely payment of child support obligations.

Our analysis is guided by the following well-settled principles. All statutes carry a strong presumption of constitutionality. *In re Rodney H.*, 223 Ill. 2d 510, 516 (2006); *Wickham v. Byrne*, 199 Ill. 2d 309, 316 (2002). Accordingly, this court will uphold a statute if reasonably possible to do so (*Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12, 21 (2003); *Wickham*, 199 Ill. 2d at 316), and will "resolve all doubts in favor of constitutional validity" (*People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 272 (1988)). The party challenging the statute–here, Miller–bears the burden of rebutting the presumption by clearly demonstrating the statute's constitutional infirmity. *Rodney H.*, 223 Ill. 2d at 516; *Allen*, 208 Ill. 2d at 21. Whether a statute is unconstitutional is a question of law, and thus our review proceeds *de novo*. *Rodney H.*, 223 Ill. 2d at 516; *Allen*, 208 Ill. 2d at 21.

Preliminarily, we note that although Miller claimed a violation of his due process rights under both the federal and state constitutions, he advanced no argument and cited no authority for the proposition that our state due process clause provides him greater protection than its federal counterpart. The appellate court did not distinguish the federal due process clause and the state due process clause in its opinion. 369 Ill. App. 3d at 50-51. Because we discern no reason to

construe our due process clause differently than the federal due process clause on the specific issue before us, we will treat the two clauses as coextensive and will be guided by federal precedent. See *People v. Molnar*, 222 Ill. 2d 495, 510 (2006); *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 226-27 (1999).

No question exists that our General Assembly possesses the authority to establish a civil penalty for an employer's violation of the Withholding Act. See *Missouri Pacific Ry. Co. v. Humes*, 115 U.S. 512, 523, 29 L. Ed. 463, 466, 6 S. Ct. 110, 114 (1885) ("The power of the State to impose fines and penalties for a violation of its statutory requirements is coeval with government"); *Knox County ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 559 (1999) (pursuant to its police power, " 'the legislature has broad discretion to determine not only what the public interest and welfare require, but to determine the measures needed to secure such interest' "), quoting *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 364 (1985); *People v. P.H.*, 145 Ill. 2d 209, 233 (1991) ("Under the State's police power, the legislature has discretion to prescribe penalties for defined offenses"); 19 Ill. L. & Prac. *Fines, Forfeitures, & Penalties* §3, at 410 (1991) ("The legislature has the authority to set the nature and extent of penalties").

The legislature's authority to set a statutory penalty is, however, limited by the requirements of due process. *St. Louis, Iron Mountain, & Southern Ry. Co. v. Williams*, 251 U.S. 63, 66, 64 L. Ed. 139, 141, 40 S. Ct. 71, 73 (1919); see also *Opyt's Amoco, Inc. v. Village of South Holland*, 149 Ill. 2d 265, 270 (1992) ("Due process requirements prevent the arbitrary and unreasonable exercise of the police power"); *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 158-59 (1955) ("The police power, however, while paramount to the rights of the individual, is still restrained by the fundamental principles of justice connoted by the phrase, due process of law"). Whereas procedural due process governs the procedures employed to deny a person's life, liberty or property interest, substantive due process limits the state's ability to act, irrespective of the procedural protections provided. *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 117 L. Ed. 2d 261, 273, 112 S. Ct. 1061, 1068 (1992). The case at bar presents a substantive due process claim.

Where the statute at issue does not implicate a fundamental constitutional right, courts employ the rational basis test to determine whether the statute satisfies substantive due process. Under this test, the statute need only bear a reasonable relationship to a legitimate state interest. *Washington v. Glucksberg*, 521 U.S. 702, 722, 138 L. Ed. 2d 772, 788-89, 117 S. Ct. 2258, 2268 (1997); *In re J.W.*, 204 Ill. 2d 50, 67 (2003). Miller does not claim an infringement of a fundamental constitutional right and does not challenge the appellate court's conclusion that, "[o]n its face, the $100-per-day penalty provision rationally advances the State's legitimate interest in encouraging the prompt payment of child support." 369 Ill. App. 3d at 51. Indeed, as this court has acknowledged, "it is difficult to imagine a more compelling State interest than the support of children." *Sheppard*, 124 Ill. 2d at 277. The "needs of the custodial parents and their children for swift establishment and rapid enforcement of support obligations" is "obvious." *Sheppard*, 124 Ill. 2d at 276. The legislature's adoption of the penalty provision in section 35(a) of the Withholding Act was clearly intended as an enforcement measure to ensure employer compliance with the statute and "to help combat the crisis of child support delinquency." *Dunahee v. Chenoa Welding & Fabrication, Inc.*, 273 Ill. App. 3d 201, 206 (1995). Employers who are subject to withholding notices have innumerable opportunities to violate the statute. In the absence of a penalty provision, an employer might be inclined to retain the withheld support payments for its own use. That is, the "longer a withheld child support check is not mailed to the obligee, the longer those funds are available for the employer to use to its own advantage." *Dunahee*, 273 Ill. App. 3d at 208-09.

We note, too, that the harm suffered by custodial parents and their children where payments are not received on a regular and timely basis is not necessarily susceptible of precise measurement, and that the eventual receipt of a child support payment may not adequately compensate the family for the delay. See *Dunahee*, 273 Ill. App. 3d at 208 (recognizing that an employer's noncompliance with its support obligation may force the custodial parent to postpone purchasing essentials such as food or medicine). Thus, the need for uniform adherence to the Withholding Act is paramount.

Although inferentially conceding that the statute is constitutional on its face, Miller maintains that the statutory penalty, as applied to him, is grossly exaggerated and out of proportion to the severity of his conduct and the amount of child support involved. Miller likens the penalty here to the imposition of a life sentence for a series of speeding tickets. In short, "the punishment does not fit the crime."

We agree with Miller that a statutory penalty which is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable" will run afoul of the due process clause. *Williams*, 251 U.S. at 67, 64 L. Ed. at 141, 40 S. Ct. at 73. Such a penalty, the appellate court correctly recognized, "does not further a legitimate government purpose" (369 Ill. App. 3d at 50), and thus fails the rational basis test. We disagree, however, that the penalty at issue here should be so characterized. In reaching this conclusion, we are guided by the United States Supreme Court's opinion in *Williams*.

In *Williams*, the Supreme Court considered a due process challenge to an Arkansas statute which regulated passenger rail rates within the state. Under the statute, any railroad company that demanded or collected a rate higher than that prescribed by the statute was subjected, for each offense, to a penalty of not less than $50 nor more than $300, plus the costs of suit and a reasonable attorney fee. A railroad company demanded and collected $0.66 more than the prescribed fare from two passengers, who subsequently brought suit under the statute. Each passenger obtained a judgment for the overcharge, a penalty of $75, an attorney fee of $25, and the costs of suit. The Arkansas Supreme Court affirmed the judgment, and the case proceeded to the United States Supreme Court.

The Supreme Court initially noted that enforcement of the statutory penalty in a suit by a private party, as opposed to state action, is a matter of legislative discretion. The Supreme Court also observed that the penalty need not be confined or proportioned to the passenger's loss or damages. *Williams*, 251 U.S. at 66, 64 L. Ed. at 140-41, 40 S. Ct. at 73. Because the penalty is imposed "as a punishment for the violation of a public law, the legislature may adjust its amount to the public wrong rather than the private injury, just as if it were going to the State." *Williams*, 251 U.S. at 66, 64 L. Ed. at 141, 40 S. Ct. at 73.

In determining the ultimate question of whether the statutory penalty conflicted with the due process clause, the Supreme Court acknowledged the "wide latitude of discretion" states possess in prescribing penalties for violations of their laws, and opined that a statutory penalty will transcend the limits of that discretion "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Williams*, 251 U.S. at 66-67, 64 L. Ed. at 141, 40 S. Ct. at 73. Based on these principles, the Supreme Court upheld the penalty against the railroad company's due process challenge:

> "When the penalty is contrasted with the overcharge possible in any instance it of course seems large, but, as we have said, its validity is not to be tested in that way. When it is considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established passenger rates, we think it properly cannot be said to be so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." *Williams*, 251 U.S. at 67, 64 L. Ed. at 141, 40 S. Ct. at 73.

The principles underlying the *Williams* decision still have vitality today. In *Texas v. American Blastfax, Inc.*, 121 F. Supp. 2d 1085 (W.D. Tex. 2000), a federal district court applied the *Williams* holding in rejecting a substantive due process challenge to the federal Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. §227 (2000)). The TCPA, which prohibits the sending of any unsolicited advertisement to a telephone facsimile machine (47 U.S.C. §227(b)(1)(C) (2000)), provides minimum statutory damages of $500 for each violation (47 U.S.C. §227(f)(1) (2000)). In a suit brought by the Texas Attorney General, the defendant argued that the TCPA violates due process because the minimum statutory damages are grossly disproportionate to any actual harm suffered by the recipients of the unsolicited faxes. The federal district court rejected this argument:

> "Congress identified two legitimate public harms addressed by the TCPA's ban on junk faxes: (1) unsolicited fax advertisements can substantially interfere with a business or residence because fax machines generally can handle only one

message at a time, at the exclusion of other messages; and (2) junk faxes shift nearly all of the advertiser's printing costs to the recipient of the advertisement. [Citations.] *** [T]he TCPA's $500 minimum damages provision, when measured against the overall harms of unsolicited fax advertising and the public interest in deterring such conduct, is not 'so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable.' " *Blastfax*, 121 F. Supp. 2d at 1091, quoting *Williams*, 251 U.S. at 67, 64 L. Ed. at 141, 40 S. Ct. at 73.

See also *Native American Arts, Inc. v. Bundy-Howard, Inc.*, 168 F. Supp. 2d 905, 914-15 (N.D. Ill. 2001) (where the district court relied on *Williams* to reject a due process challenge to the Indian Arts and Crafts Act, under which a plaintiff may recover the greater of treble damages or $1,000 per day for each day that a product which falsely suggests it is Indian-made is offered for sale or sold).

Application of the *Williams* principles to the facts of this case persuades us that section 35(a) of the Withholding Act, as applied to Miller, does not conflict with the due process clause.

During the 2½-year period relevant to this litigation, Miller, by his own admission, violated the Withholding Act on 11,721 separate occasions. This figure does not include the thousands of violations Miller allegedly committed prior to Lenora filing suit. Although Miller continuously withheld the required support from Harold's weekly wages, Miller waited five weeks after suit was filed before mailing another child support payment to the SDU, and failed to mail any further payments for another 20 weeks. A 10-month delay preceded the next payment. In all, during the 128 weeks at issue, Miller mailed the weekly support on only 11 occasions. His sporadic payment practice resulted in the payment of child support which was, on average, 90 days late, and as much as 10 months late.

Significantly, Miller was aware of his statutory obligations, and equally aware of the $100-per-day penalty, as set forth in the withholding notice delivered to him in May 2001. Miller was reminded of his obligations and the statutory penalty by Lenora's counsel in his October 2001 letter. Nonetheless, Miller repeatedly and knowingly violated the statute and his noncompliance continued, as indicated above, even after suit was filed. Miller's disregard of the Withholding

-13-

Act persisted even after the circuit court twice ordered him to stay current, and even after Lenora filed two petitions for rule to show cause.

We recognize that the individual daily penalties amassed by Miller produce a weighty sum when aggregated. Miller, however, could have avoided the imposition of any penalties simply by complying with his statutory obligation upon service of the withholding notice or at least after suit was filed. Miller chose to do otherwise. Because Miller controlled the extent of the penalty, he cannot now complain that the penalty is harsh when compared to the amount of child support at issue. See *In re Marriage of Chen*, 354 Ill. App. 3d 1004, 1022 (2004) (rejecting employer's claim that $36,100 penalty under the Withholding Act, which was adjusted to $90,600 on appeal, was excessive compared to the amount actually owed because "it is the employer that controls the extent of the fine"); *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 857 (2007) (rejecting defendant's argument that $135,825 fine imposed under the Municipal Code was excessive because defendant's argument "ignores that almost all of that amount is based on a [$100] per-offense penalty and that it was [defendant] who controlled the extent of those fines").

Miller alludes to the dire financial consequences to him if the circuit court's judgment is upheld, but he offered no evidence on this issue in the trial court. This aside, we decline to judge the constitutionality of the penalty here with reference to Miller's assets. Our lawmakers are under no obligation to make unlawful conduct affordable, particularly where multiple statutory violations are at issue. See *United States of America ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719, 747 (N.D. Ill. 2007) (declining to conduct economic analysis of defendants' excessiveness challenge to statutory penalty because excessiveness determination "should turn on the nature of the Defendants' conduct, not the state of his coffers"). Accord *Dunahee*, 273 Ill. App. 3d at 208 (rejecting employer's argument that $12,000 penalty under the Withholding Act is unjust as applied to a small business and would cause hardship).

Based on the important societal interests at stake and the concomitant need for adherence to the Withholding Act, coupled with the egregiousness of Miller's conduct, we cannot say that the statute is unconstitutional as applied to Miller. Were we to hold otherwise,

then "[a]ll an employer would have to do to evade any penalty is nothing, as Miller did here. It could pile up the nonpayments and, when called to account under the penalty provisions, contend it cannot be required to pay because the mandatory penalty is unconstitutionally excessive." 369 Ill. App. 3d at 54 (Wolfson, P.J., dissenting).

The appellate court, in concluding that the statute violated Miller's due process rights, focused on what the court called the "gross disparity" between the million dollar judgment here and the $25,000 maximum fine imposed by the Non-Support Punishment Act on a parent who willfully fails to pay child support (750 ILCS 16/15(d) (West 2004)). The appellate court reasoned that the judgment against Miller is approximately 47 times greater than the maximum fine the legislature found necessary to ensure a parent's compliance with a child support obligation and is thus unconstitutionally severe. 369 Ill. App. 3d at 51. We agree with petitioners that the appellate court's comparison of the two statutes is not an apt one and provides an insufficient basis for holding section 35(a) of the Withholding Act unconstitutional as applied to Miller.

In contrast to the Withholding Act, which imposes a $100-per-day civil penalty (750 ILCS 28/35(a) (West 2004)), the Non-Support Punishment Act imposes criminal liability. Depending upon the circumstances, a parent convicted under the Non-Support Punishment Act is subject to a fine not to exceed $25,000 and, in addition thereto, may be sentenced to a term of imprisonment. A repeat offender, for example, is guilty of a Class 4 felony and may be imprisoned for up to three years. See 750 ILCS 16/15(b), (d) (West 2004) (setting forth the applicable sentences and fines); 730 ILCS 5/5–8–1(a)(7) (West 2004) ("for a Class 4 felony, the sentence shall be not less then 1 year and not more than 3 years").

The appellate court did not consider the possibility of imprisonment, which the legislature must have concluded was necessary, in addition to a criminal fine, to ensure a parent's compliance with his or her support obligations. Thus, even if we were inclined to focus on Miller's accumulated penalty, as the appellate court did, rather than the $100 daily penalty, the differences between the Withholding Act and the Non-Support Punishment Act prevent any meaningful comparison.

We note that the appellate court, during the course of its analysis, cited favorably to *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003). 369 Ill. App. 3d at 50. In *State Farm*, the Supreme Court reiterated the three guideposts, first identified in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 134 L. Ed. 2d 809, 116 S. Ct. 1589 (1996), that courts should use in determining whether a punitive damage award is unconstitutionally excessive. *State Farm*, 538 U.S. at 418, 155 L. Ed. 2d at 601, 123 S. Ct. at 1520, citing *Gore*, 517 U.S. at 575, 134 L. Ed. 2d at 826, 116 S. Ct. at 1598-99. The appellate court here did not mention, much less apply, the *Gore* guideposts in this case. The appellate court cited *State Farm* only for the limited proposition that, "If a penalty is grossly excessive, it does not further a legitimate government purpose and constitutes an arbitrary deprivation of property. See *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 417, 155 L. Ed. 2d 585, 600, 123 S. Ct. 1513, 1520 (2003)." 369 Ill. App. 3d at 50. Nonetheless, prompted by the appellate court's citation to *State Farm*, the Attorney General argues that the excessiveness test applicable to jury awards of punitive damages at issue in *State Farm* has no relevance to the calculation of the statutory penalty at issue here. The Attorney General notes that our appellate court has so held. See *Chen*, 354 Ill. App. 3d at 1022.

In *Chen*, an employer who was subject to a $90,600 penalty under the Withholding Act argued that the penalty was grossly excessive and violated its due process rights. The employer urged the appellate court to resolve its due process claim by looking to the punitive damage cases decided by the United States Supreme Court and applying the criteria identified in *Gore* and *State Farm*. The appellate court declined to do so:

"Because this case involves a statutory penalty rather than an award of punitive damages, we decline to resolve [the employer's] due process claim based on the above [*Gore*] criteria. Simply stated, the concerns over the imprecise manner in which punitive damages systems are administered are not present here. Unlike the inherent uncertainty associated with punitive damages, section 35 of the [Withholding] Act provides employers with exact notice of the $100-per-day

-16-

penalty they will face for failing to comply with a support order. Indeed, employers receive personal notice of their duties to withhold and pay over income, as well as the penalty for failing to do so, through service of the income withholding order." *Chen*, 354 Ill. App. 3d at 1022.

See also *Express Valet*, 373 Ill. App. 3d at 858 (following *Chen* and declining to apply the *Gore* criteria to determine whether $135,825 fine imposed under the Municipal Code was excessive); *Native American Arts*, 168 F. Supp. 2d at 914 (declining to apply the *Gore* criteria to determine whether the $1,000-per-day statutory damages applicable under the Indian Arts and Crafts Act violated the defendant's substantive due process rights).

In response to the Attorney General's argument, Miller states that the *Gore* guideposts directly apply to this case. We note that Miller did not advance this argument in the trial court or the appellate court, and that he cites no supporting authority in his brief before this court. Moreover, Miller makes no attempt to distinguish or discredit the *Chen* case. In light of the foregoing circumstances, we find it unnecessary to address the matter further.

## CONCLUSION

For the reasons discussed, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

-17-