# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Metropolitan Life Insurance Co. v. Hamer*, 2012 IL App (1st) 110400

---

| | |
|---|---|
| Appellate Court Caption | METROPOLITAN LIFE INSURANCE COMPANY and UNITARY SUBSIDIARIES, Plaintiffs-Appellees, v. BRIAN HAMER, as Director of the Illinois Department of Revenue, ALEXI GIANNOULIAS, as Treasurer of the State of Illinois, and THE DEPARTMENT OF REVENUE, Defendants-Appellants. |
| District & No. | First District, First Division<br>Docket No. 1-11-0400 |
| Filed | March 5, 2012 |
| Rehearing denied | March 23, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for plaintiff taxpayer in its action to recover half of the penalty it paid under the double interest provision in section 3-2 of the Uniform Penalty and Interest Act applicable to taxes eligible for amnesty under the Tax Delinquency Amnesty Act, but not paid during the amnesty period, since the taxes plaintiff paid were the result of an audit that was completed long after the amnesty period in 2003 had passed, plaintiff did not know it had any taxes due during the amnesty period, it could not have anticipated the amnesty program, and it should not have been subjected to the double interest penalty when the taxes were actually paid. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-50788; the Hon. James C. Murray, Jr., Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Chicago (Michael Scodro, Solicitor General, and Sunil Bhave, Assistant Attorney General, of counsel), for appellants.

Neal Gerber & Eisenberg LLP, of Chicago (John A. Biek, Andrea R. Dudding, and Emily Mulder Milman, of counsel), for appellees.

Panel

JUSTICE KARNEZIS delivered the judgment of the court, with opinion.
Justice Hall concurred in the judgment and opinion.
Presiding Justice Hoffman dissented, with opinion.

**OPINION**

¶ 1      Appellants Brian Hamer, as Director of the Illinois Department of Revenue, Alexi Giannoulias, as Treasurer of the State of Illinois, and the Illinois Department of Revenue appeal the trial court's order granting summary judgment in favor of appellees Metropolitan Life Insurance Company and Unitary Subsidiaries (collectively Met Life).[1] On appeal, appellants contend that the trial court erred in granting summary judgment because Met Life's failure to pay all of its taxes due during the 2003 amnesty period subjected Met Life to a double interest penalty, and that the double interest penalty did not violate substantive due process. For the following reasons, we affirm the judgment of the trial court.

¶ 2                              Background

¶ 3      In this case, we interpret the meaning of the phrase "all taxes due" in section 10 of the Tax Delinquency Amnesty Act (Amnesty Act) (35 ILCS 745/10 (West 2008)). In 2003, in an effort to raise revenue for the State of Illinois, the Illinois legislature passed the Amnesty Act, which provided amnesty to taxpayers who paid any tax owed for any taxable period after June 30, 1983, and prior to July 1, 2002. To participate in the amnesty program, taxpayers had to make their full payment during the amnesty period from October 1, 2003, through November 15, 2003.

¶ 4      Specifically, section 10 of the Amnesty Act provided:

"[U]pon payment by a taxpayer of *all taxes due* from that taxpayer to the State of Illinois for any taxable period ending after June 30, 1983 and prior to July 1, 2002, the Department [of Revenue] shall abate and not seek to collect any interest or penalties that may be applicable and the Department shall not seek civil or criminal prosecution for any

---

[1]The current Treasurer is Dan Rutherford, who is substituted for Alexi Giannoulias in this action pursuant to section 2-1008(d) of the Code of Civil Procedure (735 ILCS 5/2-1008(d) (West 2008)).

taxpayer for the period of time for which amnesty has been granted to the taxpayer." (Emphasis added.) 35 ILCS 745/10 (West 2008).

¶ 5    The legislature additionally amended section 3-2 of the Uniform Penalty and Interest Act (35 ILCS 735/3-2(f) (West 2008)) to provide a double interest penalty for those taxpayers that had a tax liability eligible for amnesty but did not pay the liability during the amnesty period. Specifically, section 3-2(f) provided:

"If a taxpayer has a tax liability that is eligible for amnesty under the [Amnesty Act] and the taxpayer fails to satisfy the tax liability during the amnesty period provided for in that Act, then the interest charged by the Department under this Section shall be imposed at a rate that is 200% of the rate that would otherwise be imposed under this Section." 35 ILCS 735/3-2(f) (West 2008).

¶ 6    The parties stipulated to the following facts. Met Life timely filed its Illinois income tax returns for tax years 1998 and 1999, paying the income tax reported on the returns. In December 2000, the Internal Revenue Service (IRS) began its audit of Met Life for tax years 1997, 1998 and 1999. The audit was finally completed in August 2004 and concluded that Met Life's federal taxable income for tax years 1998 and 1999 was more than what Met Life had indicated on its tax returns.

¶ 7    In May 2002, the Illinois Department of Revenue (Department) began its audit of Met Life for tax years 1998 and 1999. The Department's audit continued for several years as well, and Met Life provided the Department with the IRS' finalized federal adjustments. In 2004, the Department's auditor determined that Met Life owed additional state income tax for tax years 1998 and 1999, and Met Life made a payment of $678,191 in February 2005. The auditor later determined that Met Life owed an additional $270,085, which Met Life paid in January 2006. Subsequently, the audit was reopened and Met Life made a final payment of $705,879 in May 2007. In May 2008, the Department notified Met Life that it was assessing Met Life a double interest penalty in the amount of $2,211,824 (later reduced to $2,207,456). Met Life paid the penalty under protest, alleging that it was not subject to the double interest provision in section 3-2(f) of the Uniform Penalty and Interest Act.

¶ 8    In July 2008, Met Life filed a verified complaint against appellants for an injunction and declaratory judgment under the State Officers and Employees Money Disposition Act (Protest Monies Act) (30 ILCS 230/1 *et seq*. (West 2008)) in the circuit court of Cook County. Met Life sought to recover half of the penalty it had paid under the double interest provision. Met Life alleged that because the Department's audit was not completed until long after the amnesty period had passed, it could not have participated in the amnesty program and the double interest penalty should not apply.

¶ 9    Met Life subsequently filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2010)). In the motion, Met Life argued that the phrase "all taxes due" in section 10 of the Amnesty Act included those taxes assessed and due, not an undeterminable amount that was later assessed and due as a result of a federal or state audit. Met Life further argued that the double interest penalty violated its right to due process because the provision was arbitrary and unreasonable.

¶ 10    The trial court granted Met Life's motion for summary judgment, finding that Met Life was not subject to the double interest penalty. In construing the phrase "all taxes due" in the

Amnesty Act, the trial court determined that it applied to those taxpayers who "knew by way of assessment or otherwise that taxes were due and owing" to the state. The court found that Met Life's obligation for taxes due for the tax years in question was not determined until August 2004, well beyond the expiration of the amnesty period. Therefore, the court granted the motion for summary judgment and ordered a refund to Met Life of half the penalty amount, plus interest. The court also stayed its order pending appeal. Appellants now appeal from the court's order.

¶ 11                                    Analysis

¶ 12    On appeal, appellants contend that the trial court erred in granting summary judgment because Met Life's failure to pay all of its taxes due during the 2003 amnesty period subjected Met Life to a double interest penalty and that the double interest penalty did not violate substantive due process.

¶ 13    Summary judgment is proper if the pleadings, depositions, affidavits, admissions, and other matters on file demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Smith v. Armor Plus Co.*, 248 Ill. App. 3d 831, 839 (1993). Appellate review of an order granting summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 14    Appellants contend that the phrase "all taxes due" in section 10 of the Amnesty Act referred to the income tax that Met Life owed for tax years 1998 and 1999, which was due when Met Life filed its income tax returns for those tax years. Appellants point to section 601(a) of the Illinois Income Tax Act (35 ILCS 5/601(a) (West 2008)), which provides that taxes for a taxable year become due when the tax return for that tax year is due. Therefore, appellants maintain that since Met Life could have paid the additional amount of taxes during the 2003 amnesty period that Met Life owed but did not pay when it filed its returns, the double interest penalty applied.

¶ 15    Here, we initially note that the Amnesty Act does not define the phrase "all taxes due." We further note that our research has disclosed no case law interpreting the 2003 Amnesty Act and the parties agree that none exists. Therefore, we turn to the rules of statutory interpretation for guidance. The fundamental rule of statutory interpretation is to ascertain and effectuate the legislature's intent. *Brucker v. Mercola*, 227 Ill. 2d 502, 513 (2007). The plain language of the statute is the best indication of that intent, and if that language is clear and unambiguous, it must be given effect. *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364, 370 (2009).

¶ 16    We agree with the trial court's interpretation that "all taxes due" means those taxes that a taxpayer knew were due and owing during the amnesty period. Under the circumstances of this case, Met Life could not have participated in the protections afforded by the Amnesty Act because Met Life did not know it owed additional taxes during the amnesty period. During the six-week amnesty period, Met Life was undergoing both a federal and state audit; no final determination had been made in either audit until August 2004, nearly one year after the amnesty period. During the amnesty period, Met Life and the state auditors did not know whether Met Life owed additional taxes. Therefore, Met Life did not yet have a tax liability eligible for amnesty. When Met Life became aware that it owed additional taxes, the amnesty

period had already expired. We conclude that since Met Life did not know it had any taxes due during the amnesty period, it could not have participated in the amnesty program and it should not have been subject to the double interest penalty in section 3-2 of the Uniform Penalty and Interest Act.

¶ 17     Appellants also argue that section 601(a) of the Illinois Income Tax Act supports their contention. That section provides that taxes for a taxable year become due when the tax return for that tax year is due. We agree with appellants' contention that section 601(a) of the Illinois Income Tax Act does provide for when income taxes become due. However, we part ways with appellants' contention that, therefore, section 601(a) of the Illinois Income Tax Act controls the interpretation of "all taxes due" in section 10 of the Amnesty Act. Met Life's income tax for the tax years in question became due when it filed its returns for those tax years. And, by filing its returns and paying the tax amount indicated on the returns, Met Life paid the amount that was due. When the state audit concluded that Met Life had underpaid for the tax years in question and owed additional income tax, Met Life then became liable for the additional amount, which occurred in 2004, after the expiration of the amnesty period. Since neither Met Life nor the Department knew whether Met Life owed additional taxes during the amnesty period, Met Life did not have a tax liability eligible for amnesty during that period and the double interest penalty in section 3-2 of the Uniform Penalty and Interest Act should not have applied. As stated above, we find that "all taxes due" in section 10 of the Amnesty Act means those taxes that a taxpayer knew were due and owing during the amnesty period.

¶ 18     Appellants further argue that the emergency rules promulgated by the Department to implement the Amnesty Act support their contention that Met Life could have paid its tax liability during the amnesty period. Appellants maintain that section 521.105 of title 86 of the Illinois Administrative Code (86 Ill. Adm. Code 521.105, adopted at 27 Ill. Reg. 15163, 15168 (eff. Sept. 11, 2003)) provided that taxpayers such as Met Life, who were under audit during the amnesty period, should have made a "good faith estimate" of their tax liability to avoid the double interest penalty.

¶ 19     The parties direct our attention to several subsections of section 521.105 that are relevant.

¶ 20     Subsection (j) provided in relevant part:

"Payment of All Taxes Due. *** In order to participate in the Amnesty Program a taxpayer must pay the entire liability for a tax type and tax period, irrespective of whether that liability is known to the Department or the taxpayer, or whether the Department has assessed it." 86 Ill. Adm. Code 521.105(j), adopted at 27 Ill. Reg. 15161, 15168 (eff. Sept. 11, 2003).

¶ 21     Subsection (k) provided in relevant part:

"Underpayment and Overpayment of Tax Due. Taxpayers, including taxpayers under audit during the Amnesty Program Period, who are unsure of the exact amount of a tax liability should make a good faith estimate of the amount of the liability. If the Department later determines that a payment made during the Amnesty Program Period is insufficient to completely satisfy the tax liability for which the payment was made, and the applicable statute of limitations has not yet expired, the Department may send a bill to the taxpayer for the remaining taxes due. Pursuant to 35 ILCS 735/3-2, 3-3, 3-4, 3-5,

3-6 and 3-7.5, the Department will assess 200% of the penalties and interest that would otherwise be applied to the portion of the liability that was not paid. *** All other overpayments will be credited to the taxpayer." 86 Ill. Adm. Code 521.105(k), adopted at 27 Ill. Reg. 15161, 15168-69 (eff. Sept. 11, 2003).

¶ 22    Subsection (l) provided in relevant part:

"A taxpayer who is under federal audit may participate in the Amnesty Program by following the procedure set out in subsection (k) above and making a good faith estimate of the increased liability that may be owed to the Department. *** Although participants in the Amnesty Program may not seek or claim refunds, a limited exception to this rule will be permitted for taxpayers whose refund claims are based upon final determination of the Internal Revenue Service or the federal courts." 86 Ill. Adm. Code 521.105(l), adopted at 27 Ill. Reg. 15161, 15170 (eff. Sept. 11, 2003).

¶ 23    We are not persuaded by appellants' reliance on section 521.105. We begin with subsection (j). We are unsure how, as subsection (j) provided, a taxpayer must pay its entire tax liability "irrespective of whether that liability is known to the Department or the taxpayer." In essence, to participate in the amnesty program, subsection (j) required payment of taxes even when the taxpayer or the Department did not know there was a tax liability. We are unable to discern any logical interpretation of this subsection.

¶ 24    Turning to subsection (k), it provided that "[t]axpayers, including taxpayers under audit during the Amnesty Program Period, who are unsure of the exact amount of a tax liability should make a good faith estimate of the amount of the liability." 86 Ill. Adm. Code 521.105(k), adopted at 27 Ill. Reg. 15161, 15168-69 (eff. Sept. 11, 2003). Similarly, subsection (l) provided that a taxpayer under federal audit may participate in the amnesty program by making a good-faith estimate of its liability to the Department. We find that subsections (k) and (l) exceeded the legislative intent behind the Amnesty Act and the actual statutory language in section 10 of the Amnesty Act. The 2003 Amnesty Act was passed to raise revenue for the State by giving amnesty to those taxpayers who paid any tax owed for any taxable period after June 30, 1983, and prior to July 1, 2002. To receive amnesty, section 10 simply required a taxpayer to pay "all taxes due." We believe that subsections (k) and (l), which required payment of a good-faith estimate of an unknown amount to the Department exceeded the legislative intent of the statute and the actual language used in the statute. Therefore, we are not persuaded by appellant's reliance on section 521.105.

¶ 25    Since we have determined that the trial court properly granted Met Life's motion for summary judgment, we need not consider appellants' additional contention that the double interest penalty did not violate substantive due process.

¶ 26    Accordingly, we affirm the judgment of the trial court.

¶ 27    Affirmed.

¶ 28    PRESIDING JUSTICE HOFFMAN, dissenting.

¶ 29    The resolution of this case rests upon the construction of the phrase "all taxes due" as it appears in section 10 of the Tax Delinquency Amnesty Act (Amnesty Act) (35 ILCS 745/10

(West 2004). The majority appears to hold that the phrase means all taxes known and assessed. For the reasons which follow, I construe the phrase to mean all taxes due on the date fixed for filing the taxpayer's tax return, without assessment, notice, or demand, and without regard to any extension of time for filing the return. Consequently, I respectfully dissent.

¶ 30   The majority has accurately set out the uncontested facts of this case. Section 10 of the Amnesty Act sets forth an amnesty period from October 1, 2003, through November 15, 2003, and goes on to provide that:

"[U]pon payment by a taxpayer of *all taxes due* from that taxpayer to the State of Illinois for any taxable period ending after June 30, 1983 and prior to July 1, 2002, the Department shall abate and not seek to collect any interest or penalties that may be applicable and the Department shall not seek civil or criminal prosecution for any taxpayer for the period of time for which amnesty has been granted to the taxpayer." (Emphasis added.) 35 ILCS 745/10 (West 2004).

At all times relevant, section 3-2(f) of the Uniform Penalty and Interest Act (Penalty Act) (35 ILCS 735/3-2(f) (West 2004)) provided as follows:

"If a taxpayer has a tax liability that is eligible for amnesty under the Tax Delinquency Amnesty Act and the taxpayer fails to satisfy the tax liability during the amnesty period provided for in that Act, then the interest charged by the Department under this Section shall be imposed at a rate that is 200% of the rate that would otherwise be imposed under this Section."

¶ 31   If, as the Department argues, the entire tax liability for any given tax year is due on the date fixed for filing the taxpayer's tax return, then clearly Met Life failed to satisfy its tax liability for tax years 1998 and 1999 during the amnesty period from October 1, 2003, through November 15, 2003, provided for in section 10 of the Amnesty Act, and the Department properly imposed double interest under section 3-2(f) of the Penalty Act. On the other hand, if Met Life's additional Illinois tax liability for the years 1998 and 1999 resulting from the federal audit is not deemed to have been due until after the close of the amnesty period on November 15, 2003, as the majority appears to have found, the summary judgment in favor of Met Life was properly granted, as Met Life had no tax liability eligible for amnesty and the double interest penalty provision of section 3-2(f) of the Penalty Act is inapplicable.

¶ 32   The majority acknowledges that Met Life's income tax for the years 1998 and 1999 "became due when it filed its returns for those years." *Supra* ¶ 17. Nevertheless, it goes on to hold that "by filing its returns and paying the tax amount indicated on the returns, Met Life paid the amount that was due," and it was only when the state audit revealed that Met Life had underpaid its taxes for the years 1998 and 1999 that Met Life "became liable for the additional amount." *Supra* ¶ 17. Unless I misunderstand the holding, the majority seems to be saying that, although a taxpayer's income tax liability becomes due when it timely files its tax return, so long as the taxpayer pays the amount of tax due as reflected on the return when the return is filed, it only becomes liable for an underpayment of taxes when a state audit so demonstrates. I cannot agree.

¶ 33   When, as in this case, the language of a statute is clear and unambiguous, courts must

interpret the statute according to its terms without resorting to aids of construction. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995). We are simply not at liberty to rewrite statutes under the guise of interpretation.

¶ 34　　　When an unambiguous term contained in a statute is not specifically defined, it should be given its plain and ordinary meaning. *Hayes v. Mercy Hospital & Medical Center*, 136 Ill. 2d 450, 455, 557 N.E.2d 873 (1990). I find nothing ambiguous about the term "due." "Due" is defined as: "owed or owing as a debt" (Webster's Third New International Dictionary 699 (1981)) and "Owing or payable; constituting a debt" (Black's Law Dictionary 515 (7th ed. 1999)).

¶ 35　　　Section 601(a) of the Illinois Income Tax Act (Tax Act) (35 ILCS 5/601(a) (West 1998)) provides, in relevant part, that:

> "Every taxpayer required to file a return under this Act shall, without assessment, notice or demand, pay any tax due thereon to the Department, at the place fixed for filing, on or before the date fixed for filing such return (determined without regard to any extension of time for filing the return) pursuant to regulations prescribed by the Department."

¶ 36　　　If, as section 601(a) provides, payment of Illinois income tax is to be made on or before the date fixed for filing of the taxpayer's return, then I am at a loss to understand how it can be said that the taxpayer does not become liable for an underpayment of taxes until a state audit concludes that additional tax is due. Either the additional tax was owed at the time that the taxpayer's return was filed or it was not.

¶ 37　　　I believe that a plain reading of section 601(a) establishes that income taxes are "due" on or before the date fixed for filing of the taxpayer's return, without assessment, notice or demand and that includes any additional sums that might later be demanded by the Department as a consequence of an underpayment of tax made at the time that the taxpayers return was filed. In this case, that would mean that Met Life underpaid its 1998 and 1999 taxes when its returns for those tax years were filed, and the additional sums due as a consequence of that underpayment were also due on the dates that the returns were filed. The taxes at issue are for the years 1998 and 1999, and as a consequence, Met Life was eligible for amnesty under section 10 of the Amnesty Act. However, because Met Life did not pay "all taxes due" as a result of the underpayment of taxes made with its 1998 and 1999 tax returns during the amnesty period set forth in section 10 of the Amnesty Act, it became liable for double interest pursuant to the provisions of section 3-2(f) of the Penalty Act.

¶ 38　　　Met Life has also argued that the imposition of double interest under the facts of this case would violate its substantive due process rights. It does not argue that section 3-2(f) of the Penalty Act bears no relationship to a legitimate state interest, nor does it argue that the statute is obviously unreasonable. Rather, Met Life contends that the Department's attempts to collect double interest is arbitrary and unreasonable because Met Life did not know what its tax liability was going to be until after the expiration of the amnesty period.

¶ 39　　　Met Life does not distinguish its due process rights under the federal and state constitutions, nor does it present any argument that its due process rights under the Illinois Constitution are greater than those of its federal counterpart. I find no reason to interpret Met Life's due process rights under the Illinois Constitution differently from its rights under the federal constitution in the context of the circumstances present in this case.

¶ 40     The State's power to impose penalties for a violation of its statutory requirements "is coeval with government." *Missouri Pacific Ry. Co. v. Humes*, 115 U.S. 512, 523 (1885). The legislature's authority to set a statutory penalty is limited, however, by the requirements of due process. *St. Louis, Iron Mountain & Southern Ry. Co. v. Williams*, 251 U.S. 63, 66 (1919); *In re Marriage of Miller*, 227 Ill. 2d 185, 196, 879 N.E.2d 292 (2007). When, as in this case, the statute at issue does not implicate a fundamental constitutional right, a rational basis test is used to determine whether a statute satisfies substantive due process. *In re Marriage of Miller*, 227 Ill. 2d at 197. Under this test, the statute need only bear a reasonable relationship to a legitimate state interest. *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997); *In re Marriage of Miller*, 227 Ill. 2d at 197.

¶ 41     As noted earlier, Met Life makes no argument that section 3-2(f) of the Penalty Act bears no relationship to a legitimate state interest; nor could it. Providing a penalty for the underpayment of income tax liability clearly advances the State's legitimate interest in collecting revenue owed to it. Finally, the regulatory scheme adopted by the Department afforded Met Life the opportunity to make a "good faith estimate" of its additional tax liability for 1998 and 1999 during the amnesty period (86 Ill. Adm. Code 521.105(k), adopted at 27 Ill. Reg. 15161, 15168 (eff. Sept. 11, 2003)) and, in the event that it paid a sum in excess of its additional tax liability, seek a refund of the overpayment (86 Ill. Adm. Code 521.105(l), adopted at 27 Ill. Reg. 15161, 15170 (eff. Sept. 11, 2003)). Contrary to Met Life's arguments, I do not believe that the statutory scheme at issue is either arbitrary or unreasonable, and it does not violate Met Life's due process rights.

¶ 42     Based upon the foregoing analysis, I believe that the circuit court erred in granting summary judgment in favor of Met Life.