# Illinois Official Reports

## Appellate Court

*In re Marriage of Murray*, 2014 IL App (2d) 121253

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF JESSICA A. MURRAY, Petitioner and Plaintiff-Appellee and Cross-Appellant, and JEFFREY C. MURRAY, Respondent (McHenry County Conservation District, Defendant-Appellant and Cross-Appellee). |
| District & No. | Second District<br>Docket No. 2-12-1253 |
| Filed | June 11, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a marriage dissolution action where the payroll service used by respondent's employer failed to deduct child support payments on five occasions, the trial court's order imposing a capped penalty of $50,000 on respondent's employer, a county conservation district, for the five violations of section 35 of the Income Withholding for Support Act was reversed, notwithstanding the fact that petitioner was entitled to a penalty of $407,700 pursuant to the Act, since the conservation district paid petitioner the arrearage of $1,086.90 to remedy its failure to perform under the withholding order, section 2-102 of the Tort Immunity Act immunized the conservation district from "punitive or exemplary" damages, "notwithstanding any other provision of law," and local taxpayers would be punished by awarding petitioner more than the missed support. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 03-DV-1080; the Hon. Gerald M. Zopp, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Thomas G. DiCianni, of Ancel Glink Diamond Bush DiCianni & Krafthefer, PC, of Chicago, for appellant.

Terry R. Mohr, of Mohr & Sullivan, P.C., of Algonquin, for appellee.

Panel

PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Zenoff and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1 As part of a marriage dissolution judgment, the trial court ordered respondent, Jeffrey C. Murray, to pay child support to petitioner, Jessica A. Murray. To facilitate the payments, the court ordered Jeffrey's employer, the McHenry County conservation district (Conservation District), to withhold and forward the payments from Jeffrey's paychecks pursuant to the Income Withholding for Support Act (Withholding Act) (750 ILCS 28/1 *et seq.* (West 2010)). The Conservation District's payroll vendor failed to process the child support payments for five of Jeffrey's paychecks. Jessica filed a complaint against the Conservation District, seeking a $1,086.90 arrearage as well as a statutory penalty that ultimately grew to $407,700. See 750 ILCS 28/35(a) (West 2010) ($100-per-day penalty for each violation).

¶ 2 The Conservation District moved for dismissal, arguing that the statutory penalty is tantamount to a punitive award, which is barred by section 2-102 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-102 (West 2012)). The trial court denied the motion without comment.

¶ 3 The Conservation District paid the arrearage to stop the accrual of the statutory penalty. Following a bench trial, the court entered judgment for Jessica on the statutory penalty claim, but capped the award at $50,000 based on a recent amendment to section 35 of the Withholding Act that limits such penalties to $10,000 per violation.

¶ 4 The Conservation District appeals the penalty, arguing that (1) it is punitive, and therefore section 2-102 of the Tort Immunity Act confers immunity; (2) the evidence shows that the Conservation District did not "knowingly" fail to process the child support under section 35 of the Withholding Act, because the Conservation District did not learn of the nonpayment until Jessica filed suit; and (3) even if the Conservation District knowingly failed to correct the processing errors after Jessica filed suit, no penalty is owed, because such penalty was stayed by an order entered in a separate action that has since been dismissed. Jessica cross-appeals, arguing that the court erred in capping the penalty at $10,000 per violation. We hold that, although the Conservation District is subject to the requirements of section 35 of the Withholding Act, section 2-102 of the Tort Immunity Act

confers immunity from the $100-per-day penalty because the penalty is "punitive." We reverse.

¶ 5                                    I. BACKGROUND
¶ 6                          A. Child Support Processing Errors

¶ 7    Although the matter proceeded to a bench trial, most of the facts are undisputed. On April 16, 2004, the trial court entered a judgment for dissolution of marriage and an order directing Jeffrey's employer to withhold a portion of his income for child support. At the time, Jeffrey was an employee of the Conservation District.

¶ 8    In May 2004, the Conservation District received notice of the withholding order entered in the marriage dissolution case. The Conservation District was ordered to deduct $217.38 from each of Jeffrey's biweekly (*i.e.*, every other week) paychecks and pay that amount to the Illinois State Disbursement Unit (SDU), which would forward that amount to Jessica to satisfy Jeffrey's child support obligation. In 2004, the Conservation District outsourced its payroll functions to Advantage Payroll Services. Beginning on January 1, 2005, Ceridian replaced Advantage as the Conservation District's payroll vendor.

¶ 9    The Conservation District provided each payroll vendor with information to be entered into the vendor's system. Each vendor then administered all payroll functions for the Conservation District, including preparing and electronically signing paychecks and calculating and deducting amounts from an employee's pay for taxes, union dues, health insurance premiums, child support, wage garnishments, and other obligations paid directly from the employee's paycheck.

¶ 10   The Conservation District paid Jeffrey by direct deposit into his checking account. For more than three years, the child support payments were deducted from his paycheck, transferred to the SDU, and then directly deposited by the SDU into Jessica's checking account at McHenry State Bank.

¶ 11   In five instances, however, Ceridian failed to process Jeffrey's child support payments. The errors corresponded with Jeffrey's paychecks on August 31, 2007, February 29, 2008, January 30, 2009, July 31, 2009, and December 30, 2009. Each time, the child support payment was paid by direct deposit into Jeffrey's account rather than to the SDU, and Jessica did not receive a payment. Each error occurred when three paychecks were issued within a month. During those months, Ceridian's system processed the child support payments for the first two pay periods but not the third.

¶ 12   On January 1, 2010, Auto Data Processing (ADP) replaced Ceridian as the Conservation District's payroll vendor. ADP processed the first paychecks on January 15, 2010. The Conservation District audited the first payroll period, to confirm that ADP had handled the checks properly, and discovered that a child support payment had not been deducted from Jeffrey's paycheck. On January 21, 2010, the Conservation District sent a check to the SDU for the missed payment. The Conservation District was reimbursed from Jeffrey's next paycheck on January 29, 2010.

¶ 13                                   B. Withholding Act

¶ 14        On August 2, 2010, Jessica filed a complaint against the Conservation District in the marriage dissolution proceeding, seeking payment of $1,086.90 in past-due child support. Jessica also asserted a claim for a penalty under section 35 of the Withholding Act.[1] 750 ILCS 28/35 (West 2010). The Conservation District was served with a motion to add it as a necessary party in the dissolution proceeding, and the Conservation District filed an appearance.

¶ 15        Section 35(a) of the Withholding Act sets forth the obligations of employers, like the Conservation District, that have been served with an income-withholding notice. The parties correctly agree that the Conservation District owed a duty to process Jeffrey's "income" under section 35. See 750 ILCS 28/15(d) (West 2010) (" 'Income' means any form of periodic payment to an individual, regardless of source, *** made by any person, private entity, federal or state government, any unit of local government, school district or any entity created by Public Act ***."). The version of section 35(a) that was in effect when Jessica filed her claim states in relevant part as follows:

> "It shall be the duty of any payor who has been served with an income withholding notice to deduct and pay over income as provided in this Section. The payor shall deduct the amount designated in the income withholding notice, *** beginning no later than the next payment of income which is payable or creditable to the obligor that occurs 14 days following the date the income withholding notice was mailed ***. *** The payor shall pay the amount withheld to the State Disbursement Unit within 7 business days after the date the amount would (but for the duty to withhold income) have been paid or credited to the obligor. *If the payor knowingly fails to withhold the amount designated in the income withholding notice or to pay any amount withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor, then the payor shall pay a penalty of $100 for each day that the amount designated in the income withholding notice (whether or not withheld by the payor) is not paid to the State Disbursement Unit after the period of 7 business days has expired.* The failure of a payor, on more than one occasion, to pay amounts withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor creates a presumption that the payor knowingly failed to pay over the amounts. *This penalty may be collected in a civil action which may be brought against the payor in favor of the obligee or public office.* *** For purposes of this Act, a withheld amount shall be considered paid by a payor on the date it is mailed by the payor ***." (Emphases added.) 750 ILCS 28/35(a) (West 2010).

---

[1]Earlier, on June 7, 2010, Jessica filed a separate action for the arrearage and penalty in case No. 10-LA-209 in the law division of the circuit court. On July 12, 2010, the court granted the Conservation District a temporary stay on the accrual of a penalty. Then, on August 3, 2010, the day after Jessica filed her complaint in the dissolution proceeding, the court granted the Conservation District a permanent stay, granted Jessica's motion to voluntarily dismiss the action, and entered a written finding under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that the order was immediately appealable. No appeal was taken from the order.

¶ 16    The $100-per-day penalty is assessed for each violation of the Withholding Act. " 'A separate violation occurs each time an employer knowingly fails to remit an amount that it has withheld from an employee's paycheck.' " *In re Marriage of Miller*, 227 Ill. 2d 185, 194 (2007) (quoting *Grams v. Autozone, Inc*., 319 Ill. App. 3d 567, 571 (2001)).

¶ 17    On November 10, 2010, the Conservation District filed a combined motion to dismiss the complaint under section 2-615 and section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619, 2-619.1 (West 2012)). The Conservation District argued that the complaint must be dismissed because (1) section 2-102 of the Tort Immunity Act is affirmative matter defeating the penalty claim (see 745 ILCS 10/2-102 (West 2012); 735 ILCS 5/2-619(a)(9) (West 2012)); (2) the complaint is time-barred by section 8-101 of the Tort Immunity Act (see 745 ILCS 10/8-101 (West 2012); 735 ILCS 5/2-619(a)(5) (West 2012)); (3) the Conservation District did not "knowingly" fail to process the payments (see 750 ILCS 28/35(a) (West 2010); 735 ILCS 5/2-619(a)(9) (West 2012)); (4) the Withholding Act is unconstitutional as applied to the Conservation District (see 735 ILCS 5/2-615 (West 2012)); and (5) *laches* bars the claim (see 735 ILCS 5/2-619(a)(9) (West 2012)). On March 7, 2011, the trial court denied the motion without comment, and the matter proceeded to a bench trial on mostly stipulated facts.

¶ 18                    C. Trial Court's Ruling

¶ 19    On October 16, 2012, the trial court entered a judgment for Jessica on her penalty claim based on the Conservation District's failure to process the five child support payments of $217.38 each. The court noted that the Conservation District already had paid the SDU $1,086.90 to satisfy the arrearage, but the court did not enter judgment regarding that payment.

¶ 20    The court continued as follows. Jeffrey was paid biweekly. By failing to withhold and remit child support from his paycheck on August 31, 2007, the Conservation District was subject to a penalty at the rate of $100 per day. When the Conservation District also failed to withhold and remit the support payment from his paycheck on February 29, 2008, and the first payment was still outstanding, the Conservation District was subject to two $100 penalties for each day that both payments remained outstanding. Because the Conservation District failed to process five support payments, corresponding with Jeffrey's paychecks on August 31, 2007, February 29, 2008, January 30, 2009, July 31, 2009, and December 30, 2009, the Conservation District was subject to multiple $100 penalties until the arrearage was paid.

¶ 21    On February 25, 2011, the Conservation District paid the SDU $1,086.90, which was equal to the five missing child support payments, after the trial court denied a stay on the accrual of the penalty. The trial court ruled that the Conservation District's payment terminated the accrual of an additional penalty and would not constitute a judicial admission of any allegations in the complaint.

¶ 22    Counting the number of days from each violation to February 25, 2011, when the Conservation District paid the arrearage, the court calculated the five penalty periods as follows: (1) 1,266 days, (2) 1,084 days, (3) 748 days, (4) 565 days, and (5) 414 days. This explains how the Conservation District accumulated 4,077 penalties in less than 2½ years

and why Jessica argues that she is entitled to a judgment in the amount of $407,700. See *Miller*, 227 Ill. 2d at 194.

¶ 23    The court found that the Conservation District knew of its obligation to withhold the sum of $217.38 from each of Jeffrey's paychecks and remit the payments to the SDU within seven business days of the date the funds would have been paid to Jeffrey but for the withholding obligation. The court also found that the Conservation District was aware of the penalties that would apply for noncompliance with the withholding order. The Conservation District admitted receipt of the notice to withhold, and its action in withholding and remitting child support to the SDU sufficiently established the receipt without a further finding by the court.

¶ 24    As to the five processing errors, the court found that the Conservation District, knowing of its obligation to withhold and remit child support, did not audit its payroll vendors to ensure compliance with the law until January 2010. As such, the Conservation District knowingly failed to withhold Jeffrey's child support payments and relied on third parties to do so without confirming that the vendors were acting properly on the Conservation District's behalf. The court determined that the five errors created a statutory presumption of the Conservation District's knowing failure to process the payments and that the Conservation District failed to rebut that presumption.

¶ 25    Emphasizing that the Conservation District owed a duty to audit the withholding and remittance of child support, the court found that the information or knowledge was in the Conservation District's total control even though it passed the responsibility to a third party. At the very least, the Conservation District had knowledge of an error when it audited ADP in January 2010, but the Conservation District took no remedial action until served with a summons and complaint.

¶ 26    The court found that, as early as July 6, 2010, when the Conservation District was served with a complaint in case No. 10-LA-209, the Conservation District had notice of the five processing errors. However, the Conservation District failed to correct the processing errors until February 25, 2011.

¶ 27    The court held that the Conservation District's failure to pay the delinquent amounts after receipt of the complaint in case No. 10-LA-209, coupled with the lack of any audit, proves that it knowingly failed to comply with the withholding order. The court agreed with Jessica that any purported stay issued in case No. 10-LA-209 ran contrary to the statute and, being a temporary order, terminated upon the dismissal of that action. Therefore, the court concluded, the stay had no effect on the accrual of the penalty.

¶ 28    The court further held that the penalty of section 35 of the Withholding Act does not violate the Conservation District's due process rights and that the doctrine of *laches* does not bar Jessica's claim. Finally, the statute of limitations did not run on the first two missed payments, because they remained outstanding and continued to accrue penalty days, preventing the limitations period from commencing. The Conservation District learned of the processing problem no later than during the audit of ADP in January 2010. The court also ruled that "[t]he discovery rule should apply to this case to prevent the statute of limitations from accruing because [Jessica] was not aware of the missed payments until January 2010 and could not determine the missed payments as she did not have the factual information from which to determine the missed payments until March 2010."

¶ 29    The court concluded that, although Jessica is entitled to the maximum statutory penalty for all five missed payments, section 35, as amended, capped the penalty at $10,000 for each violation and created new duties. Accordingly, the court granted Jessica a judgment of $50,000. The Conservation District appeals, and Jessica cross-appeals.

¶ 30                                II. ANALYSIS
¶ 31                             A. Tort Immunity Act
¶ 32    The Conservation District filed a combined motion to dismiss Jessica's complaint, pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619, 2-619.1 (West 2012)). On appeal, the Conservation District argues that Jessica's penalty claim must be dismissed under section 2-619(a)(9) of the Code because section 2-102 of the Tort Immunity Act (745 ILCS 10/2-102 (West 2012)) immunizes the Conservation District from the penalty prescribed for failing to process child support payments according to section 35 of the Withholding Act.

¶ 33    Section 2-619(a)(9) of the Code provides that an action may be dismissed when "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012). A ruling on a section 2-619 motion must " 'interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.' " *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003) (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997)). However, conclusions of law or fact unsupported by specific factual allegations are not to be taken as true. *Collins v. Bartlett Park District*, 2013 IL App (2d) 130006, ¶ 52.

¶ 34    A ruling on a motion to dismiss pursuant to section 2-619(a)(9) is reviewed *de novo. Van Meter*, 207 Ill. 2d at 368. In reviewing a ruling on a motion to dismiss under section 2-619(a)(9), the relevant inquiry is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55 (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)).

¶ 35    Jessica argues that, because there is no dispute that the Conservation District breached its duties under the Withholding Act, we would improperly "tinker" with the statute by granting immunity. Jessica conflates the principles of statutory duties and immunity.

¶ 36    The purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from the operation of government. By providing immunity, the legislature sought to prevent public funds from being diverted from their intended purpose to the payment of damages claims. The Tort Immunity Act grants only immunities and defenses; it does not create duties. Rather, the Tort Immunity Act merely codifies existing common-law duties, to which the delineated immunities apply. *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 479 (2002); *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001). Therefore, whether a local public entity owed a duty and whether that entity enjoyed immunity are separate issues. Once a court determines that a duty exists, it then addresses whether the Tort Immunity Act applies. *Arteman*, 198 Ill. 2d at 480; *Village of Bloomingdale*, 196 Ill. 2d at 490.

¶ 37    In resolving whether section 2-102 of the Tort Immunity Act confers immunity from the penalty provision of section 35 of the Withholding Act, we note that the cardinal rule of

statutory construction is to ascertain and give effect to the legislature's intent. *Paszkowski v. Metropolitan Water Reclamation District of Greater Chicago*, 213 Ill. 2d 1, 6 (2004). Our analysis begins with the statutory language, which is the best indication of the legislature's intent. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34-35 (2004). The language must be afforded its plain, ordinary, and popularly understood meaning. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). When the language is unambiguous, the statute must be applied as written without resort to other aids of construction. *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 10 (2001).

¶ 38     Neither Jessica nor the Conservation District argues that section 35 or section 2-102 is ambiguous. Moreover, the Conservation District concedes that section 35 created a duty to process Jeffrey's child support payments according to the withholding order. Section 35 provides that, when a payor knowingly fails to follow a withholding order, the payor shall pay a penalty of $100 for each day that the amount is not paid. 750 ILCS 28/35 (West 2010).

¶ 39     However, section 2-102 provides in relevant part that "*[n]otwithstanding any other provision of law*, a local public entity is not liable to pay *punitive or exemplary damages* in any action brought directly or indirectly against it by the injured party or a third party." (Emphases added.) 745 ILCS 10/2-102 (West 2012). Section 2-102 immunizes against "punitive or exemplary damages" assessed against agencies like the Conservation District, because counties are local public entities under the Tort Immunity Act. See 745 ILCS 10/1-206 (West 2012).

¶ 40     We reject Jessica's claim that, because her penalty claim was not brought in tort, the Tort Immunity Act does not apply. Section 2-101 excludes certain claims from immunity under the Tort Immunity Act:

"Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee. Nothing in this Act affects the liability, if any, of a local public entity or public employee, based on:

a). Contract;

b). Operation as a common carrier; and this Act does not apply to any entity organized under or subject to the 'Metropolitan Transit Authority Act', approved April 12, 1945, as amended;

c). The 'Workers' Compensation Act', approved July 9, 1951, as heretofore or hereafter amended;

d). The 'Workers' Occupational Diseases Act', approved July 9, 1951, as heretofore or hereafter amended;

e). Section 1-4-7 of the 'Illinois Municipal Code', approved May 29, 1961, as heretofore or hereafter amended[; and]

f). The 'Illinois Uniform Conviction Information Act', enacted by the 85th General Assembly, as heretofore or hereafter amended." 745 ILCS 10/2-101 (West 2012).

¶ 41     Neither general actions for statutory penalties nor claims under the Withholding Act are explicitly excluded from immunity pursuant to section 2-101 of the Tort Immunity Act. Furthermore, section 8-101 of the Tort Immunity Act, which establishes the statute of limitations for civil actions against local governments, includes "any action, whether based

upon the common law or statutes or Constitution of this State." 745 ILCS 10/8-101 (West 2012). The plain and ordinary meaning of the language used in sections 2-101, 2-102, and 8-101 suggests that a claim for a statutory penalty under the Withholding Act is not excluded from immunity conferred by the Tort Immunity Act.

¶ 42 In *Raintree Homes, Inc. v. Village of Long Grove*, 335 Ill. App. 3d 317, 320 (2002), this court stated that "the Tort Immunity Act *** applies only to actions in tort." However, the matter advanced to the supreme court, which stated that "we do not adopt or approve of the appellate court's reasoning that the Tort Immunity Act categorically excludes actions that do not sound in tort." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004).

¶ 43 Furthermore, in *Village of Bloomingdale*, the supreme court applied the Tort Immunity Act to a nontort claim based in quasi-contract. A land developer filed a rezoning petition and paid the required fee, and later it filed a counterclaim against the village for breaching its duty to process the petition in good faith. *Village of Bloomingdale*, 196 Ill. 2d at 500. The developer labeled its claim "quasi-contract[ual]" to avail itself of the tort immunity exclusion of section 2-101(a), which states that the Tort Immunity Act does not affect liability based on contract. *Village of Bloomingdale*, 196 Ill. 2d at 500. The supreme court ruled that the developer's "quasi-contract" claim was not excluded under section 2-101 and that the village was immune from liability under section 2-104. *Village of Bloomingdale*, 196 Ill. 2d at 500-01. By considering the application of section 2-104 to the quasi-contractual claim, the supreme court demonstrated that tort immunity potentially applies to nontort claims that are not excluded by section 2-101 of the Tort Immunity Act. *Village of Bloomingdale*, 196 Ill. 2d at 501. Consistent with *Village of Bloomingdale*, we consider the application of section 2-102 to Jessica's claim for a penalty under the Withholding Act, because her claim is not excluded under section 2-101 of the Tort Immunity Act. As in *Village of Bloomingdale*, this matter is a civil action for damages brought against a governmental entity that allegedly breached its duty according to a legislative enactment.

¶ 44 Relying on *Paulson v. County of De Kalb*, 268 Ill. App. 3d 78, 80 (1994), the Conservation District argues that the penalty prescribed by section 35 of the Withholding Act qualifies as " 'punitive or exemplary damages' " under section 2-102 of the Tort Immunity Act. In *Paulson*, the plaintiff sued a county-run nursing home and sought to treble the damages pursuant to section 3-602 of the Nursing Home Care Act (210 ILCS 45/3-602 (West 1994)). The county claimed that section 3-602 was a punitive-damages provision that did not apply, because section 2-102 of the Tort Immunity Act (745 ILCS 10/2-102 (West 1994)) prohibited the assessment of punitive damages against a governmental entity.

¶ 45 Explaining that "[p]unitive damages are not awarded as compensation but instead serve to punish the offender and to deter that party and others from committing similar acts of wrongdoing," this court concluded that two-thirds of the treble damages awarded pursuant to section 3-602 of the Nursing Home Care Act are considered "punitive" for purposes of immunity under section 2-102. *Paulson*, 268 Ill. App. 3d at 80. We held that, although section 3-602 of the Nursing Home Care Act was enacted primarily to encourage private enforcement of the statute and to compensate residents for violations of their rights, section 3-602 is punitive because " '[t]he obvious purpose of allowing plaintiffs to recover three times their actual damages, apart from encouraging utilization of the remedy, is to punish violators and to discourage future violations.' " *Paulson*, 268 Ill. App. 3d at 80 (quoting

- 9 -

*Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 361 (1986)). Because " ' "actual damages" ' " are intended to make the plaintiff whole, any multiplication of the amount of actual damages serves to increase the award beyond the merely compensatory. *** ' "The remedy provided is not solely civil; two thirds of the recovery is not remedial and inevitably presupposes a punitive purpose." ' " *Paulson*, 268 Ill. App. 3d at 81 (quoting *People ex rel. Fahner v. Climatemp, Inc.*, 101 Ill. App. 3d 1077, 1080 (1981), quoting *Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184, 189 (2d Cir. 1955)).

¶ 46 The plaintiff in *Paulson* argued that, for purposes of section 2-102 of the Tort Immunity Act, treble damages bear no similarity to punitive damages, which, unlike treble damages, can be much higher, are generally jury questions, and are based in part upon the net worth of the defendant. *Paulson*, 268 Ill. App. 3d at 81. We disagreed, emphasizing that "there is no ignoring that two-thirds of the recovery that section 3-602 authorizes cannot be characterized as merely compensatory." *Paulson*, 268 Ill. App. 3d at 81. "Although treble damages are not identical in all respects to traditional common-law punitive damages, their overall character is punitive." *Paulson*, 268 Ill. App. 3d at 81. Based on the distinction between compensatory and punitive damages, this court concluded that two-thirds of the statutory treble damages constituted punitive damages and that therefore the county-run nursing home had immunity from that portion of the award.

¶ 47 Like the treble damages provision of section 3-602 of the Nursing Home Care Act, the overall character of the penalty provision of section 35 of the Withholding Act is punitive. Apart from encouraging utilization of the remedy for an employer's failure to follow a withholding order, the obvious purpose of allowing plaintiffs like Jessica to recover $100 per day for each knowing violation of section 35 is to punish violators like the Conservation District and to discourage future violations. See *Paulson*, 268 Ill. App. 3d at 80. Actual damages recoverable under section 35 are intended to make the plaintiff whole, but the $100-per-day penalty serves to increase the award beyond the merely compensatory. 750 ILCS 28/35 (West 2010) ("This penalty may be collected in a civil action which may be brought against the payor in favor of the obligee or public office."). The penalty provision of section 35 is not remedial and presupposes a punitive purpose. See *Paulson*, 268 Ill. App. 3d at 81 (citing *Fahner*, 101 Ill. App. 3d at 1080).

¶ 48 Section 2-102 of the Tort Immunity Act and section 35 of the Withholding Act can be read together harmoniously. Section 2-102 contains the prefatory phrase "notwithstanding any other provision of law," which was intended to clarify the relationship between the Tort Immunity Act, which prohibits the assessment of punitive damages against a local public entity, and all other statutory or common-law actions that allow the assessment of punitive damages in certain circumstances. *Paulson*, 268 Ill. App. 3d at 82. The general regulatory provisions of section 35 apply to local public entities, affording an obligee a cause of action to recover an arrearage when the employer fails to perform according to the withholding order. Here, even though the punitive penalty provision does not apply, section 35 imposed on the Conservation District a duty to withhold and forward Jeffrey's child support payments, giving Jessica a cause of action to recover those payments when the Conservation District failed to do so. See 750 ILCS 28/35 (West 2010).

¶ 49 If the legislature had intended to deny governmental entities immunity for claims brought under section 35 of the Withholding Act, it could have explicitly stated so. We will not read

such a limitation into section 2-102 of the Tort Immunity Act or disregard the phrase "notwithstanding any other provision of law" contained therein. See *Shields v. Judges' Retirement System of Illinois*, 204 Ill. 2d 488, 497 (2003) (it is the dominion of the legislature to enact laws and the courts to construe them, and we can neither restrict nor enlarge the meaning of an unambiguous statute); *Paulson*, 268 Ill. App. 3d at 82-83.

¶ 50    Further, denying the Conservation District immunity from a penalty under section 35 of the Withholding Act would contravene the well-established policy of section 2-102 of the Tort Immunity Act by holding taxpayers responsible for the agency's violation of the law. See *Paulson*, 268 Ill. App. 3d at 83. Requiring local public entities to compensate persons such as Jessica for the injuries they have sustained serves a salutary purpose, but it is unsound public policy to punish local taxpayers for the misconduct of employees over whom the taxpayers have no control. *Paulson*, 268 Ill. App. 3d at 83. Imposing any damages award greater than that required to compensate Jessica would serve primarily to punish local taxpayers.

¶ 51    Jessica cites *In re Marriage of Chen*, 354 Ill. App. 3d 1004 (2004), for the proposition that the penalty prescribed by section 35 of the Withholding Act is not "punitive" for purposes of immunity. In *Chen*, an employer who was subject to a $90,600 penalty under section 35 argued that the penalty was grossly excessive and violated its due process rights. The employer urged this court to resolve its due process claim by looking to the punitive damages cases decided by the United States Supreme Court and applying the criteria identified in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-85 (1996), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 418 (2003). This court declined to do so:

> "Because this case involves a statutory penalty rather than an award of punitive damages, we decline to resolve [the employer's] due process claim based on the above [*Gore*] criteria. Simply stated, the concerns over the imprecise manner in which punitive damages systems are administered are not present here. Unlike the inherent uncertainty associated with punitive damages, section 35 of the [Withholding] Act provides employers with exact notice of the $100-per-day penalty they will face for failing to comply with a support order. Indeed, employers receive personal notice of their duties to withhold and pay over income, as well as the penalty for failing to do so, through service of the income withholding order." *Chen*, 354 Ill. App. 3d at 1022.

¶ 52    Thus, the *Chen* court distinguished common-law punitive damages, which are uncertain, from the section 35 penalty, where "employers receive personal notice of their duties to withhold and pay over income, as well as the penalty for failing to do so, through service of the income withholding order." *Chen*, 354 Ill. App. 3d at 1022. While "punitive damages pose an acute danger of arbitrary deprivation of property, and jury instructions typically afford the jury wide discretion in choosing amounts," section 35 sets the penalty at $100 per day, putting the employer in control of the extent of the fine. The *Chen* court relied on this distinction solely as support for holding that the due process scrutiny afforded common-law punitive damages awards does not apply to section 35 penalties.

¶ 53    Common-law punitive damages are uncertain while the penalty prescribed by section 35 is definite, but contrary to Jessica's assertion, their relative predictability does not render the

- 11 -

former punitive and the latter compensatory for purposes of section 2-102 of the Tort Immunity Act. The overall character of both is punitive. *Chen* does not compel this court to deviate from the rationale of *Paulson*.

¶ 54 The *Paulson* court held that section 2-102 of the Tort Immunity Act excludes two-thirds of a treble damages award prescribed by section 3-602 of the Nursing Home Care Act. Consistent with *Paulson*, we hold that section 2-102 affords the Conservation District immunity from the $100-per-day penalty provision that otherwise might have applied to the five violations of section 35 of the Withholding Act.

¶ 55 We determine that section 2-102 confers immunity from the penalty prescribed by section 35 of the Withholding Act. Our holding obviates the need to address the Conservation District's remaining arguments, that it did not "knowingly" fail to perform according to section 35 and that, even if it did, any potential penalty stopped accruing after the stay order was entered in case No. 10-LA-209. We also need not consider Jessica's cross-appeal, in which she argues that the court erred in capping the penalty at $10,000 per violation.

¶ 56                                III. CONCLUSION

¶ 57 For the preceding reasons, we reverse the judgment imposing a $50,000 penalty on the Conservation District for the five violations of section 35 of the Withholding Act. The parties do not dispute that the Conservation District paid $1,086.90 on February 25, 2011, to remedy its failure to perform under the withholding order.

¶ 58 Reversed.