2024 IL App (1st) 230100
No. 1-23-0100
Opinion filed August 23, 2024

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

ILLINOIS AUTOMOBILE DEALERS ASSOCIATION; )
CHICAGO AUTOMOBILE TRADE ASSOCIATION; )
PEORIA METRO NEW CAR DEALERS )
ASSOCIATION; ILLINOIS MOTORCYCLE )
DEALERS ASSOCIATION; ACIA CH AUTO LLC, )
d/b/a North City Honda; ACIA HN AUTO LLC, d/b/a )
Hyundai of Lincolnwood; ACIA KL AUTO LLC, d/b/a )
Kia of Lincolnwood; ACIA MOTORS LLC, d/b/a )
Bloomington-Normal Auto Mall; ACIA PG AUTO LLC, )
d/b/a Chevrolet of Palatine; ACIA PH AUTO LLC, d/b/a )
Hyundai of Palatine; ACIA TC AUTO LLC, d/b/a )
Toyota of Lincoln Park; ACIA TN AUTO LLC, d/b/a )
Toyota of Lincolnwood; AL CIONI FORD, INC.; AL )      Appeal from the
PIEMONTE CADILLAC, INC.; AL PIEMONTE FORD )      Circuit Court
SALES, INC.; AL PIEMONTE NISSAN, INC.; )      of Cook County.
ANDERSON DEALERSHIPS, INC., d/b/a Anderson )
Mitsubishi, Hyundai of Perryville, Rock River Ford, and )
Rock River Kia; ANDERSON DODGE, INC., d/b/a )      No. 21 CH 01438
Anderson Chrysler Dodge Jeep Ram; ANDERSON )
FORD OF CLINTON, INC.; ANDERSON MOTOR )
COMPANY OF CRYSTAL LAKE, INC., d/b/a BMW of )      The Honorable
Crystal Lake, Mazda of Crystal Lake, and Volkswagen )      David B. Adkins,
of Crystal Lake; ANDERSON NISSAN, INC., d/b/a )      Judge, presiding.
Anderson Mazda and Anderson Nissan; ANDERSON )
ROCKFORD AUTO, INC., d/b/a Anderson Toyota and )
Lexus of Rockford; ANTHONY BUICK GMC, INC.; )
APPLE CHEVROLET, INC.; ARLINGTON HEIGHTS )
FORD, LLC; ARNIE BAUER II, LLC; ARNIE BAUER )
INC.; ATVS AND MORE, INC.; AUFFENBERG )
FORD NORTH, INC.; AUFFENBERG FORD, INC.; )
AUFFENBERG HYUNDAI, INC.; AUFFENBERG )
MOTORS OF ILLINOIS, INC., d/b/a Auffenberg )
Mazda; AUTOHAUS ON EDENS, LLC; BARKAU )
BROTHERS LLC, d/b/a Barkau Chrysler Dodge Jeep )
Ram; BARKAU CHEVROLET, INC.; BARKER )

CHEVROLET, INC.; BARKER MOTOR CO.; BAUM )
CHEVROLET-BUICK CO., d/b/a Baum Motor Co.; )
BETTENHAUSEN MOTOR SALES, INC.; BILL )
JACOBS AURORA, INC.; BILL JACOBS )
NAPERVILLE, L.L.C.; BILL KAY FORD, INC.; BILL )
KAY OLDSMOBILE, INC. d/b/a Bill Kay Honda; BILL )
WALSH CHEVROLET -CADILLAC, INC.; BJL )
AUTOMOTIVE, INC., d/b/a Bob Lindsay Acura; BMI )
IMPORTS, INC.; BOB BRADY DODGE, INC.; BOB )
RIDINGS CHRYSLER-DODGE, INC., d/b/a Bob )
Ridings Pana; BOB RIDINGS FORD OF )
JACKSONVILLE, INC. d/b/a Bob Ridings Westown )
Ford, Lincoln; BOB RIDINGS LINCOLN, INC., d/b/a )
Bob Ridings Decatur; BOB RIDINGS, INC., d/b/a Bob )
Ridings Taylorville; BOCKER CHEVROLET, BUICK, )
GMC, CADILLAC, INC.; BRAD MANNING FORD, )
INC.; BREESE MOTOR SALES, INC.; BRILLIANCE )
MOTOR SALES, INC., d/b/a Brilliance Honda Of )
Crystal Lake; BRUCE FOOTE CHEVROLET, INC.; )
BRYDEN FORD, INC.; BUSS FORD SALES, L.L.C., )
d/b/a Buss Ford and Buss Lincoln; CADILLAC OF )
NAPERVILLE, INC.; CARMACK CAR CAPITOL, )
INC.; CARRIAGES OF ILLINOIS LTD.; CASTLE )
BUICK-GMC, INC.; CASTLE CHEVROLET NORTH )
LLC; CASTLE CHEVROLET, INC.; CHAMPION 444, )
LLC, d/b/a Al Piemonte Buick-GMC; CHEVROLET OF )
HOMEWOOD, INC.; COFFMAN TRUCK SALES, )
INC.; CONTINENTAL AUTOS, INC.; )
CONTINENTAL CLASSIC MOTORS, INC.; COURT )
STREET FORD, INC.; DAN HECHT CHEVROLET, )
INC.; DAN WOLF MOTORS OF NAPERVILLE, INC.; )
DAN WOLF'S CHEVROLET OF NAPERVILLE, INC.; )
DAVIS BUICK, GMC, INC.; DEIEN CHEVROLET, )
INC.; DEMPSEY DODGE-CHRYSLER-JEEP II, INC.; )
DIEPHOLZ AUTO GROUP OF PARIS, INC.; )
DIEPHOLZ AUTO GROUP, INC.; DODGE OF )
ANTIOCH, INC.; DOWNERS GROVE IMPORTS, )
LTD., d/b/a Genesis of Downers Grove, Pugi Hyundai, )
Pugi Mazda, and Pugi Volkswagen; DRISCOLL )
MOTOR CO., INC.; ED NAPLETON CALUMET CITY )
IMPORTS, INC.; ED NAPLETON ELMHURST )
IMPORTS, INC.; ED NAPLETON OAK LAWN )
IMPORTS, INC.; ED NAPLETON WESTMONT )
IMPORTS, INC.; ELMHURST AUTO GROUP, LTD., )
d/b/a Elmhurst Toyota; ELMHURST AUTO WERKS, )
LTD., d/b/a Elmhurst BMW, LTD.; ESSIG-UFTRING )

INC., d/b/a Essig-Motors Inc.; ETTLESON )
CADILLAC-BUICK-GMC, INC.; ETTLESON )
HYUNDAI, LLC; EVANS FARM EQUIPMENT, INC., )
d/b/a Evans Ford, Inc.; FEDERICO CHRYSLER- )
DODGE, INC.; FIELDS IMPORTS, INC., d/b/a Fields )
BMW; FIELDS JEEP, INC., d/b/a Fields Chrysler Jeep )
Dodge Ram; FIELDS PAG, INC., d/b/a Jaguar Land )
Rover Northfield; FINISH LINE FORD, INC.; FLAG )
CHEVROLET, INC.; FORD SQUARE OF MT. )
VERNON, LTD.; FRAN NAPLETON LINCOLN, INC., )
d/b/a Napleton Cadillac of Oak Lawn and Napleton )
Lincoln of Blue Island; FRATERNAL ENTERPRISES )
LP, d/b/a Bredemann Ford; FREEWAY FORD TRUCK )
SALES, INC.; FRIENDLY FORD, INC.; GDM )
IMPORTS, INC., d/b/a McGrath Volvo Cars Barrington; )
GERALD FORD, INC.; GERALD HYUNDAI, INC.; )
GERALD IMPORTS, INC., d/b/a Gerald Honda of )
Matteson; GERALD MOTORS, INC., d/b/a Gerald )
Toyota of Matteson; GERALD NAPERVILLE, INC., )
d/b/a Gerald Kia of Naperville; GERALD NISSAN OF )
NORTH AURORA, INC.; GERALD NISSAN, INC.; )
GERALD NORTH AURORA, INC., d/b/a Gerald Kia of )
North Aurora; GERALD SUBARU OF NORTH )
AURORA, INC.; GERALD SUBARU, INC.; )
GILLESPIE AUTOMOTIVE LLC; GLENVIEW )
LUXURY IMPORTS LLC; GOECKNER BROS. INC.; )
GOLD COAST EXOTIC IMPORTS LLC; GOLD )
COAST EXOTIC MOTORS, LLC; GOLD COAST )
MOTOR CARS, INC., d/b/a Perillo BMW, Inc.; GOLF )
MILL MOTOR SALES, INC., d/b/a Golf Mill Ford; )
GRAUE INC., d/b/a Graue Chevrolet -Buick -Cadillac; )
GREEN AUTOMOTIVE LIMITED, INC., d/b/a Green )
Dodge, Green Kia And Green Subaru; GREEN )
CHEVROLET, INC.; GREEN FAMILY HYUNDAI, )
INC.; GREEN FAMILY STORES, INC.; GREEN )
LINCOLN, INC., d/b/a Green Hyundai and Green )
Mazda; GREEN NIS, INC., d/b/a Green Nissan; )
GUSTAFSON FORD LLC; H.D.A. MOTORS, INC., )
d/b/a Continental Honda; HAGGERTY BUICK GMC, )
INC.; HAGGERTY FORD, INC.; HELLER FORD )
SALES, INC.; HIGHLAND PARK AUTOMOTIVE, )
INC.; HOPKINS FORD OF ELGIN, INC.; HOWARD )
ORLOFF IMPORTS, INC.; HYUNDAI OF )
MATTESON LLC, d/b/a World Hyundai Matteson; )
INCIPE, LLC, d/b/a Hawk Ford of Oak Lawn; )
ISRINGHAUSEN IMPORTS, INC.; JACK PHELAN

CHEVROLET, INC.; JACK PHELAN DODGE, LLC, )
d/b/a Jack Phelan Chrysler Dodge Jeep Ram; JACK )
SCHMITT CADILLAC, INC.; JAGUAR LAND )
ROVER PEORIA, INC.; JANSEN CHEVROLET CO., )
INC. ; JEFF PERRY BUICK GMC, INC.; JEFF PERRY, )
INC., d/b/a Jeff Perry Chevrolet Buick Cadillac and Jeff )
Perry Chrysler Jeep; JENNINGS CHEVROLET, INC.; )
JERRY BIGGERS CHEVROLET, INC.; JERRY )
HAGGERTY CHEVROLET, INC.; JIM McCOMB )
CHEVROLET, INC., d/b/a Uftring Weston Chevrolet )
Cadillac, Inc.; JOE RIZZA FORD OF ORLAND PARK, )
INC.; JOE RIZZA IMPORTS, INC.; JOHAWK LLC, )
d/b/a Hawk Volkswagen Of Joliet ; JP MOTORS, INC.; )
K&J CHEVROLET INC.; K&J AUTOMOTIVE, INC., )
d/b/a K&J Chrysler Dodge Jeep Ram; KELLY NISSAN, )
INC.; KEN DIEPHOLZ CHEVROLET, INC.; KING )
CITY CHRYSLER CENTER, INC.; LAND ROVER )
HINSDALE, L.L.C.; LARRY STOVESAND OF )
SOUTHERN ILLINOIS, INC., d/b/a Larry Stovesand )
Kia; LAURA BUICK-GMC, INC.; LEXGLEN, INC., )
d/b/a Fields Lexus Glenview; LIBERTY AUTO CITY, )
INC.; LIBERTY CHEVROLET, INC., d/b/a Bill Kay )
Chevrolet; LIBERTYVILLE CHEVROLET, INC.; )
LIBERTYVILLE LINCOLN SALES, INC.; )
LIGHTHOUSE BUICK GMC, INC.; LOQUERCIO )
AUTOMOTIVE NORTH LLC, d/b/a Dundee Ford; )
LOQUERCIO AUTOMOTIVE NORTHSIDE, LLC, )
d/b/a Toyota of Fox Lake; LOQUERCIO )
AUTOMOTIVE SOUTH, INC., d/b/a Honda City; )
LOQUERCIO AUTOMOTIVE WEST LLC, d/b/a Elgin )
Chrysler Dodge Jeep Ram; LOQUERCIO )
AUTOMOTIVE, INC., d/b/a Elgin Hyundai and Genesis )
of Elgin; LOREN HYUNDAI, INC., d/b/a Napleton )
Hyundai Glenview; LOU BACHRODT CHEVROLET )
CO.; M.E. FIELDS, INC., d/b/a Mini Of Glencoe North )
Shore; MANCARI CHRYSLER PLYMOUTH, INC.; )
MANGOLD FORD, INC.; MARION FORD, INC.; )
MATTSPELL MOTORS, INC., d/b/a Gurnee Chrysler )
Dodge Jeep Ram; MAX DYE, INC.; McGINLEY, INC.; )
McGRATH 1620, INC., d/b/a McGrath Acura of )
Libertyville; McGRATH ENTERPRISES, INC., d/b/a )
McGrath Honda; McGRATH IMPORTS, INC., d/b/a )
McGrath Acura of Morton Grove and McGrath Audi; )
MCGRATH MOTORS, INC., d/b/a McGrath Honda of )
St. Charles; MEIER CHEVROLET-BUICK, INC.; )
METRO FORD SALES & SERVICE, INC.; MICHAEL )

ROBERT ENTERPRISES, INC., d/b/a Chicago )
Northside Toyota; MID-CONTINENTAL )
COMPANIES, INC., d/b/a The Landmark Automotive )
Group; MIKE ANDERSON CHEVROLET OF )
CHICAGO, LLC; MIKE MILLER AUTOMOTIVE, )
INC., d/b/a Mike Miller Auto Park; MIKE MURPHY )
FORD, INC.; MOTOR WERKS OF BARRINGTON, )
INC.; NAPLETON 1050 INC., d/b/a Napleton Cadillac )
of Libertyville; NAPLETON 1527, INC., d/b/a Napleton )
Audi of Naperville; NAPLETON 2363, INC., d/b/a )
Napleton Mazda of Naperville; NAPLETON 6677, INC., )
d/b/a Jaguar Rockford and Land Rover Rockford; )
NAPLETON AURORA IMPORTS, INC.; NAPLETON )
AUTOMOTIVE OF URBANA, LLC; NAPLETON )
AUTOWERKS CRYSTAL LAKE, INC.; NAPLETON )
LIBERTYVILLE, INC., d/b/a Napleton Mazda of )
Libertyville; NAPLETON MOTOR CORP., d/b/a )
Napleton Cadillac and Napleton Subaru; NAPLETON )
RIVER OAKS CADILLAC, INC.; NAPLETON )
URBANA IMPORTS, LLC; NAPLETON'S )
ARLINGTON HEIGHTS MOTORS, INC.; )
NAPLETON'S AUTO WERKS, INC.; NAPLETON'S )
GOLDCOAST IMPORTS, INC.; NAPLETON'S PARK )
RIDGE LINCOLN, INC., d/b/a Napleton Lincoln; )
NAPLETON'S RIVER OAKS MOTORS, INC.; NJRP, )
INC., d/b/a Porsche Orland Park; NORTHWEST AUTO )
SALES, INC., d/b/a Muller's Woodfield Acura; OAK )
LAWN HYUNDAI, INC., d/b/a Happy Hyundai; OBG )
IMPORTS, INC.; PACKEY WEBB FORD, an Illinois )
Limited Partnership d/b/a Packey Webb Ford; PATRICK )
HYUNDAI, LLC; PATRICK JAGUAR, L.L.C.; )
PATRICK SCHAUMBURG AUTOMOBILES, INC.; )
PETERSEN CHEVROLET-BUICK, INC.; PHELIA, )
LLC, d/b/a Hawk Chevrolet; PHILLIPS CHEVROLET, )
INC.; PIALEX AUTOMOTIVE, LLC; PIATOY )
AUTOMOTIVE, LLC; PIEMONTE'S DUNDEE )
CHEVROLET, INC.; PRESCOTT BROTHERS, INC.; )
RA D'ORAZIO FORD, INC.; RADIO CITY )
AUTOMOTIVE, INC.; RAY DENNISON )
CHEVROLET, INC.; RIVER FRONT CHRYSLER )
JEEP, INC.; RIVER OAKS IMPORTS, INC.; RIVER )
VIEW FORD, INC.; RIVERSIDE CHEVROLET, INC.; )
RIZZA BUICK GMC CADILLAC, INC.; ROBERT )
LOQUERCIO ENTERPRISES, INC., d/b/a Elgin )
Toyota; ROESCH FINCO, L.L.C., d/b/a Larry Roesch )
Volkswagen; ROGERS AUTO GROUP, INC.;

ROLAND RICH FORD, INC.; RON TIRAPELLI )
FORD, INC.; ROSEN HYUNDAI ENTERPRISES, )
LLC; ROY SCHMIDT MOTORS, INC., d/b/a Roy )
Schmidt Honda; RPG IMPORTS, LLC ; SAM LEMAN )
CHEVROLET-BUICK, INC.; SCHERER )
AUTOMOTIVE, INC.; SCHMIDT CHEVROLET OF )
MT. VERNON, INC., d/b/a Schmidt Chevrolet Cadillac; )
SCHMIDT FORD OF SALEM, INC.; SCHMITT )
CHEVROLET, INC., d/b/a Jack Schmitt Chevrolet of )
O'Fallon; SECOND FAMILY, INC., d/b/a Bredemann )
Toyota; SESSLER FORD, INC., d/b/a Napleton Ford )
Libertyville; SHIELDS AUTO CENTER, INC.; )
SMOKY JENNINGS CHEVROLET, INC.; )
SPELLMATT MOTORS, INC., d/b/a Du Page Chrysler )
Dodge Jeep Ram; SPONTE SALES, INC., d/b/a Hawk )
Chrysler Dodge Jeep Ram Fiat ; ST. CLAIR IMPORTS, )
INC., d/b/a Auffenberg Kia; ST. CLAIR MOTORS, )
INC., d/b/a Auffenberg Chrysler Dodge Jeep Ram; ST. )
CLAIR NISSAN INC., d/b/a Auffenberg Nissan; ST. )
CLAIR VOLKSWAGEN, INC., d/b/a Auffenberg )
Volkswagen; STEVE FOLEY CADILLAC, INC.; )
STEVE SCHMITT, INC., d/b/a Steve Schmitt Chevrolet )
Buick GMC; SULLIVAN -PARKHILL )
AUTOMOTIVE, INC.; SULLIVAN -PARKHILL )
IMPORTS, INC.; SUNNYSIDE AUTO FINANCE CO., )
d/b/a Sunnyside Co.; SUNSET FORD OF WATERLOO, )
INC.; SUTTON FORD, INC.; TAYLOR BELLEVILLE )
CDJR, INC., d/b/a David Taylor Belleville Chrysler )
Dodge Jeep Ram; TAYLOR CHRYSLER DODGE )
INC., d/b/a Taylor Chrysler Dodge Jeep Ram; TAYLOR )
FORD OF MANTENO, INC.; TERRY'S )
FORD/LINCOLN-MERCURY OF PEOTONE, INC., )
d/b/a Terry's Ford of Peotone; THE ARLINGTON )
AUTOMOTIVE GROUP, INC.; TRUCK CENTERS, )
INC.; TWOB'S AUTOMOTIVE, INC., d/b/a Bob )
Lindsay Honda; TYSON MOTOR, LLC; UFTRING )
CHEVROLET, INC.; UFTRING CHRYSLER, INC.; )
UFTRING FORD, INC.; UFTRING NISSAN, INC.; )
UPTOWN MOTORS, INC., d/b/a Marino Chrysler Jeep )
Dodge; VAESSEN BROTHERS CHEVROLET, INC.; )
VC AUTO LLC, d/b/a Countryside Mitsubishi; VELDE )
CADILLAC-BUICK-GMC, INC.; VELDE FORD )
SALES, INC.; VELDE OF PEORIA, INC.; )
VERMILION AUTO CORPORATION; VIA CARLITA )
LLC, d/b/a Hawk Ford of St. Charles and Hawk Nissan; )
VICTOR FORD, INC.; VNF, INC., d/b/a Fields Volvo

Cars Northfield; WARREN CHEVROLET, INC., d/b/a )
Green Family Chevrolet; WATSEKA FORD-LINCOLN, )
INC.; WEBB CHEVROLET PLAINFIELD, INC.; )
WEBB CHEVROLET, INC.; WEST JEFF AUTO )
SALES LLC, d/b/a Hawk Cadillac, Hawk Chevrolet of )
Joliet, Hawk of Joliet, Hawk Mazda And Hawk Subaru; )
WICKSTROM AUTO GROUP, INC.; )
WILLOWBROOK FORD, INC.; WILSON CHRYSLER )
JEEP, INC.; WOLF MOTORS OF NAPERVILLE, )
INC.; WOODY BUICK-GMC, INC.; WORDEN- )
MARTIN LINCOLN MERCURY, INC.; WORLD )
AUTOMOTIVE JOLIET LLC, d/b/a World Kia Joliet; )
YEMM CHEVROLET, INC., d/b/a Yemm Chevrolet- )
Buick-GMC and Yemm Chrysler-Dodge-Jeep-Ram; )
ZEIGLER CHEVROLET SCHAUMBURG, LLC; )
ZEIGLER CHRYSLER DODGE JEEP DOWNERS )
GROVE, LLC; ZEIGLER CHRYSLER DODGE JEEP, )
LLC; ZEIGLER HOFFMAN ESTATES I, LLC; )
ZEIGLER HOFFMAN ESTATES II, LLC; ZEIGLER )
INFINITI ORLAND PARK, LLC; ZEIGLER )
LINCOLNWOOD, LLC; ZEIGLER LINCOLNWOOD )
II, LLC; ZEIGLER MOTORS, LLC; ZEIGLER )
NISSAN GURNEE, LLC; ZEIGLER NISSAN )
ORLAND PARK, LLC; ZEIGLER NORTH )
RIVERSIDE, LLC; ZEIGLER ORLAND PARK, LLC; )
and ZEIGLER SCHAUMBURG IV, LLC, )
                                                      )
      Plaintiffs-Appellants, )
                                                      )
v. )
                                                      )
THE OFFICE OF THE ILLINOIS SECRETARY OF )
STATE; ALEXI GIANNOULIAS, in His Official )
Capacity as Illinois Secretary of State; RIVIAN )
AUTOMOTIVE, INC.; RIVIAN AUTOMOTIVE, LLC; )
RIVIAN, LLC; LUCID USA, INC.; and LUCID )
GROUP USA, INC., )
                                                      )
      Defendants-Appellees. )
                                                      )

JUSTICE HYMAN delivered the judgment of the court, with opinion.

-7-

Presiding Justice Oden Johnson[*] and Justice C.A. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    We are tasked with deciding whether the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2022)) and the Motor Vehicle Franchise Act (Act) (815 ILCS 710/1 *et seq.* (West 2022)), individually or together, prohibit manufacturers from obtaining a dealer license to sell their vehicles directly to consumers.

¶ 2    Rivian Automotive, Inc. (Rivian), and Lucid USA, Inc. (Lucid), manufacture electric motor vehicles and obtained licenses from the Secretary of State (Secretary) to sell them directly to consumers. Plaintiffs, franchised motor vehicle dealers and four of their trade associations, sued them, arguing the Vehicle Code and the Act limit the sale of new motor vehicles to franchised dealerships, thereby precluding direct sales by manufacturers.

¶ 3    The trial court dismissed an amended complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2022)) for failing to state a claim. It determined that neither the Vehicle Code nor the Act prohibits Rivian and Lucid from obtaining dealer licenses and conducting direct-to-consumer sales. The trial court also rejected due process claims, finding plaintiffs failed to establish a protectable property interest in exclusive franchise-based vehicle sales.

¶ 4    Plaintiffs argue that the trial court erred because their amended complaint sufficiently alleged statutory violations and, alternatively, violations of their constitutional rights to equal protection and due process. We affirm. Neither the Vehicle Code nor the Act prohibits manufacturers from obtaining dealer licenses to sell directly to consumers, and the trial court

---

[*]Justice Sanjay Tailor participated in oral argument but has since recused himself. Presiding Justice Oden Johnson replaces him on the panel and has listened to the recorded oral argument.

did not err in dismissing plaintiffs' claims for injunctive and declaratory relief against Rivian and Lucid and *mandamus* relief against the Secretary. Moreover, plaintiffs do not possess a constitutionally protected right to have all auto manufacturers sell vehicles through franchises, and Rivian's and Lucid's dealer licenses do not infringe on plaintiffs' rights to equal protection.

¶ 5                                    Background

¶ 6        Direct sales of electric motor vehicles in Illinois date as far back as 2009, when Tesla Motors, Inc., (not a party) obtained a dealer license and opened five dealerships. In 2017, the Secretary informed Tesla that it would not renew its license or issue new licenses until Tesla created independent franchise dealerships. Tesla appealed. The Illinois Automobile Dealers Association (IADA) and the Chicago Automobile Trade Association (CATA) intervened to oppose Tesla's appeal. In 2019, an administrative consent order signed by the Secretary, Tesla, and both associations resolved the dispute by allowing Tesla to own and operate 13 direct-to-consumer dealerships.

¶ 7        Shortly after, Rivian and Lucid informed the Secretary they, too, planned to sell vehicles directly to consumers. The Secretary sought an informal opinion from the Attorney General on whether the Act prohibits direct sales. The Attorney General's informal opinion concluded the Act does not "require a newly established motor vehicle manufacturer to establish and utilize franchise dealerships for the sale of its motor vehicles in Illinois" nor "contain any specific language that would prohibit a newly established motor vehicle manufacturer from selling motor vehicles directly to the public as a motor vehicle dealer."

¶ 8        The informal opinion relied on section 4(f) of the Act, which, in relevant part, states:

"It is deemed a violation for a manufacturer, a distributor, a wholesaler, a distributor branch or division, a factory branch or division, or a wholesale branch or division, or

officer, agent, broker, shareholder, except a shareholder of 1% or less of the outstanding shares of any class of securities of a manufacturer, distributor, or wholesaler which is a publicly traded corporation, or other representative, directly or indirectly, to own or operate a place of business as a motor vehicle franchisee or motor vehicle financing affiliate ***[.]" 815 ILCS 710/4(f) (West 2022).

¶ 9    The opinion noted that the Act separately defined "franchisee" and "motor vehicle dealer" and concluded "[w]hile subsection 4(f) clearly provides that a manufacturer may not own or operate a business as a franchisee, the plain language of this statutory provision does not prohibit a manufacturer from owning or operating a business as a motor vehicle dealer." Further, the Act "reveals no specific statutory provisions that would prohibit a manufacturer from selling motor vehicles directly to consumers" and "there are no statutory provisions in Illinois law that expressly require a manufacturer to utilize a franchisee or franchise dealerships to sell new motor vehicles in Illinois."

¶ 10    IADA and CATA asked the Secretary to seek reconsideration, noting the Attorney General had not considered whether section 5-101(d) of the Vehicle Code prohibits auto manufacturers from selling directly to consumers. 625 ILCS 5/5-101(d) (West 2022). Section 5-101(d) of the Vehicle Code states, "Anything in this Chapter 5 to the contrary notwithstanding no person shall be licensed as a new vehicle dealer unless *** [h]e is authorized by contract in writing between himself and the manufacturer or franchised distributor of such make of vehicle to so sell the same in this State ***." *Id.*

¶ 11    Two state legislators also asked the Attorney General to reevaluate the informal opinion, similarly suggesting that the Vehicle Code's dealer licensing provisions, when read in conjunction with the Act, prohibit manufacturers from selling directly to consumers rather than

through franchise dealerships. The Attorney General responded that it had considered the Vehicle Code provisions in researching and drafting its informal opinion. The office remained convinced it "reflects the current state of the law and public policy in this area."

¶ 12      Plaintiffs filed a complaint seeking (i) a writ of *mandamus* directing the Secretary not to issue a license to Rivian and Lucid until they contract with an unaffiliated motor vehicle dealer; (ii) an injunction to prevent Rivian and Lucid from directly selling vehicles to consumers; and (iii) a declaration that the Vehicle Code and the Act prevent direct-to-consumer sells. (While the case was pending, Alexi Giannoulias replaced Jesse White as the Secretary and was substituted as the named party. See 735 ILCS 5/2-1008(d) (West 2022).

¶ 13      A few months later, Rivian and Lucid applied to the Secretary for dealer licenses. They stated they did not intend to use franchise dealerships but would sell through affiliates Rivian, LLC and Lucid USA, Inc., respectively. After the Secretary approved the applications and issued the licenses, plaintiffs amended their complaint seeking (i) a writ of *mandamus* directing the Secretary to prevent Rivian and Lucid from directly selling or dealing new motor vehicles in Illinois (count I); (ii) an injunction to prohibit Rivian and Lucid from directly selling or dealing new motor vehicles in Illinois (count II); (iii) a declaration that the Vehicle Code and the Act preclude manufacturers or their related entities from directly selling new motor vehicles to consumers in Illinois (count III); or, in the alternative, a declaration that the Vehicle Code and the Act, as applied by the Secretary, violates plaintiffs' equal protection and due process rights under the United States and Illinois Constitutions (count IV).

¶ 14      Rivian and Lucid filed a combined motion to dismiss, arguing plaintiffs had failed to state a claim under section 2-615 and lacked standing under section 2-619(a)(9). *Id.* §§ 2-615, 2-619(a)(9). The Secretary also moved to dismiss, arguing the complaint failed to state a claim.

The trial court granted the motions to dismiss in a memorandum opinion and order. The court noted that despite the parties' "significant argument on the policy merits of their respective positions," neither policy nor the facts are at issue. "[T]he primary dispute" is whether the Vehicle Code and the Act, "as a matter of law," permit motor vehicle manufacturers to sell directly to consumers. The court noted the question was one of first impression because, while Tesla has been using a direct sales model, disputes surrounding the legality of that model were resolved by settlement and the Attorney General's non-binding advisory opinion.

¶ 15    The trial court first looked at section 5-101(d) of the Vehicle Code, governing dealer licensing, which requires new vehicle dealers to have an "authorized *** contract in writing" with the vehicle manufacturer or franchised distributor. 625 ILCS 5/5-101(d) (West 2022). Plaintiffs argued that requiring a contract between a dealer and a manufacturer necessarily means only franchise dealers can sell new motor vehicles because a manufacturer cannot contract with itself. Rejecting this argument, the trial court concluded, "The legislature had extensive opportunities to exclude manufacturers from dealing vehicles in the definitions of those terms, in the requirements to obtain a dealer license, or elsewhere in the statute. They did not do so, and the court declines to nevertheless read such an exclusion into the law via a tortured application of inapplicable requirements." The trial court also considered the reasoning in the Attorney General's informal opinion as "sound."

¶ 16    The trial court observed that the Act "appears intended to address negotiating power imbalances (and related consumer protection concerns) between franchisees and manufacturers who do participate in the franchise system, not to force all manufacturers to do so." The court said that despite opportunities to explicitly prohibit manufacturers of

automobiles from being licensed as dealers, the Illinois legislature has "declined to do so, and it is thus reasonable to conclude it had no such intent."

¶ 17        The trial court also rejected plaintiffs' due process argument. Plaintiffs contended that allowing Rivian and Lucid to sell directly creates a "bypass system," harming their interest in the "established franchise system." The court found that neither term has a basis in the law. Although franchises have long been "the usual way of business in the automobile market," no statute requires participation in a "system," and plaintiffs have no protectable property interest. The court did not address the standing argument and dismissed the complaint with prejudice for failing to state a claim.

¶ 18                                    Analysis

¶ 19        A section 2-615 motion to dismiss attacks the complaint's legal sufficiency based on defects apparent from its face. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13. We assess whether the allegations, viewed in the light most favorable to the plaintiff, state a cause of action. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 61. We review a dismissal under section 2-615 *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).

¶ 20        A fundamental rule of statutory construction requires ascertaining and giving effect to the legislature's intent expressed by the plain and ordinary meaning of the statute's language. *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 45 (2002). Where the language is clear and unambiguous, we apply the statute as written without resorting to other aids of statutory construction. *Id.* at 45-46. A court may not append new provisions, substitute different ones, or read into the statute exceptions, limitations, or conditions unexpressed by the legislature. *Hines v. Department of Public Aid*, 221 Ill. 2d 222, 230 (2006). We review issues of statutory construction *de novo*.

¶ 21      Before proceeding, we commend the trial court for its thorough and well-reasoned consideration of the issues.

¶ 22      Motor Vehicle Code and Vehicle Franchise Act

¶ 23      Rivian and Lucid maintain that the plain language of the Act and the Vehicle Code does not prohibit them from obtaining a dealer license to sell directly to consumers. According to section 4(f) of the Act, manufacturers are prohibited from directly or indirectly owning or operating a motor vehicle franchise. It says nothing about them operating as a motor vehicle dealer.

¶ 24      Moreover, the Act distinguishes between "motor vehicle dealers" and "franchisees." A motor vehicle dealer is "any person who, in the ordinary course of business, is engaged in the business of selling new or used motor vehicles to consumers or other end users" (815 ILCS 710/2(h) (West 2022)), while a franchisee is a type of "motor vehicle dealer to whom a franchise is offered or granted." *Id.* § 2(k). Thus, "motor vehicle dealer" and "franchisee" are not synonymous and cannot be interchangeably used in section 4(f). Indeed, plaintiffs appear to concede this point and do not contend that the Act expressly prohibits manufacturers from obtaining dealer licenses.

¶ 25      Regarding the Vehicle Code, the parties agree that new motor vehicles in Illinois can only be sold by dealers licensed by the Secretary of State (625 ILCS 5/5-101(a) (West 2022)) and that neither the Vehicle Code nor the Act, expressly prohibits manufacturers from obtaining dealer licenses or selling vehicles directly to consumers. Plaintiffs argue, however, that when the relevant sections of the Vehicle Code and the Act are read together under the doctrine of *in pari materia* (*Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 24), manufacturers are prohibited from direct-to-consumer sales.

¶ 26    Plaintiffs take a convoluted route to reach their desired outcome. They point to section 5-101(b)(6) and (d) of the Vehicle Code (625 ILCS 5/5-101(b)(6), (d) (West 2022)), which they interpret as requiring a "mandatory contract requirement" between a dealer and manufacturer, thereby barring a manufacturer from obtaining a dealer license because it cannot contract with itself. Section 5-101(b)(4) states that an applicant for a new motor vehicle dealer license must disclose each manufacturer or franchised distributor of new vehicles "with whom the applicant has contracted for the sale of such new vehicles." *Id.* § 5-101(b)(4). And section 5-101(d)(1) provides that "[a]nything in this Chapter 5 to the contrary notwithstanding no person shall be licensed as a new vehicle dealer unless *** authorized by contract in writing between [it]self and the manufacturer or franchised distributor." *Id.* § 5-101(d)(1).

¶ 27    Plaintiffs further contend that (i) Rivian and Lucid cannot obtain a dealer license because the Vehicle Code's contract provisions require a separate contracting party than the manufacturer (815 ILCS 710/4(f) (West 2022)), and (ii) a contract with a third party, like their affiliates, would create a prohibited franchise. Neither argument is persuasive.

¶ 28    We first address whether the Vehicle Code imposes a "mandatory contract requirement" obligating a manufacturer to contract with a third party to obtain a dealer license. Plaintiffs rely on section 5-101(d)(1) of the Vehicle Code: "[N]o person shall be licensed as a new vehicle dealer unless *** [h]e is authorized by contract in writing between himself and the manufacturer ***." 625 ILCS 5/5-101(d)(1) (West 2022).

¶ 29    When interpreting a statute, a court "may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." (Internal quotation marks omitted.) *Mosby v. Ingalls Memorial Hospital*, 2023 IL 129081, ¶ 31. Section 5-100-1 states the General Assembly adopted the

Vehicle Code to prevent or reduce the transfer or sale of stolen vehicles or their part address by establishing a mandatory licensing system and record keeping. 625 ILCS 5/5-100-1 (West 2022). So, the General Assembly enacted the contract requirement to make certain that new motor vehicles were sold with a manufacturer's authorization and consent, not to prevent them from obtaining dealer licenses.

¶ 30    With this purpose in mind, the reasonable interpretation of section 5-101(d)(1) requires that only parties other than a manufacturer obtain a dealer license to sell new motor vehicles. Given the provision's purpose, requiring a manufacturer to contract with a third party to obtain a dealer license to sell its own vehicles makes no sense.

¶ 31    We also are unpersuaded that the contract creates an impermissible franchise under section 4(f). As noted, plaintiffs urged us to apply the doctrine of *in pari materia*. A court may resort to the *in pari materia* interpretive principle if the statute under review is ambiguous. Moreover, statutes are *in pari materia* when "they have the same purpose or object or relate to the same person or thing." (Internal quotation marks omitted.) *Rojas v. Martell*, 2020 IL App (2d) 190215, ¶ 33. Statutes on different subjects and with different purposes are not subject to the doctrine. *Id.* (citing *Miller v. American Infertility Group of Illinois, S.C.*, 386 Ill. App. 3d 141, 151 (2008)).

¶ 32    The doctrine of *in pari materia* does not apply. The Vehicle Code and the Act were adopted at different times and serve different purposes. Again, the General Assembly believed a system of mandatory licensing and record-keeping would "prevent or reduce the transfer or sale of stolen vehicles or their parts within this State." 625 ILCS 5/5-100-1 (West 2022). The Act, on the other hand, prevents "frauds, impositions, discrimination, and other abuses upon its citizens, to protect and preserve the investments and properties of the citizens of this State, to

foster healthy competition, and to provide adequate and sufficient service to consumers generally." 815 ILCS 710/1.1 (West 2022). The Act also promotes fair dealing and protects small businesses from harmful franchising practices. *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 28 (2007).

¶ 33       Moreover, even if we apply the doctrine of *in pari materia*, the plaintiffs cite no authority holding that a contract between a manufacturer and its affiliate creates a franchise under the Act. They rely on the Act's definition of "franchise" as "an oral or written arrangement for a definite or indefinite period in which a manufacturer *** grants to a motor vehicle dealer a license to use a trade name, service mark, or related characteristic, and in which there is a community of interest in the marketing of motor vehicles." 815 ILCS 710/2(i) (West 2022). Then, they make conclusory and insufficient allegations that the written contract between Rivian and Lucid and their respective affiliates creates a franchise, citing no evidence of a contract or, if there is one, what it provides. See *Premier Networks, Inc. v. Stadheim & Grear, Ltd.*, 395 Ill. App. 3d 629, 633 (2009) ("complaint will not survive a motion to dismiss if the complaint consists of only conclusions of law and conclusory factual allegations unsupported by specific factual statements").

¶ 34       Next, plaintiffs contend the trial court considered the Attorney General's nonbinding, informal opinion in ruling on the motion to dismiss. But, the trial court noted its nonbinding and advisory status and that the Attorney General had reached the same conclusion.

¶ 35       Plaintiffs also assert the trial court erred in looking beyond the statutory language to determine its meaning. Specifically, they contend the court should not have considered (i) a proposed amendment to the Act that the General Assembly never adopted, which would have prohibited manufacturers from selling vehicles directly to consumers, and (ii) statutes in other

jurisdictions barring manufacturers' direct sales. The trial court's words belie this assertion. The trial court considered them unnecessary to examine "as the court finds the text of the relevant laws does not prevent manufacturers from being dealers." The trial court added that to the extent plaintiffs pressed that section 5-101(d) of the Vehicle Code created ambiguity, the statutes' history, including the proposed legislation that mirrored legislation in other states but was never adopted, indicated the legislature's intent to allow direct sales.

¶ 36     Besides, a court may consider other sources when statutory language is ambiguous. *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶ 25 (when language can be interpreted in more than one equally reasonable way, it is ambiguous, permitting use of other aids to determine legislative intent). The trial court referred to the proposed legislation to reject plaintiffs' contention of ambiguity.

¶ 37                                    Due Process

¶ 38     Plaintiffs contend the trial court erred in dismissing their due process claim because the State violated their constitutional rights to due process by allowing Rivian and Lucid to sell directly to consumers.

¶ 39     The United States and Illinois Constitutions safeguard individuals from "governmental deprivations of life, liberty, or property without due process of law." *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 31 (citing U.S. Const., amend. XIV, and Ill. Const. 1970, art. I, § 2). There are two types of due process: substantive and procedural. *In re Marriage of Miller*, 227 Ill. 2d 185, 197 (2007). Procedural due process concerns the methods by which an individual's life, liberty, or property interest are denied, and substantive due process imposes limits on the state's power to act, regardless of the procedural protections. *Id.* Plaintiffs' brief does not state which type of due process claim they are bringing, but based on their arguments,

the claim is procedural because plaintiffs assail the "miscarriage of justice" in the granting of a dealer license Rivian and Lucid.

¶ 40    To plead a procedural due process claim, a plaintiff must allege (i) a cognizable property interest, (ii) a deprivation of that interest, and (iii) a denial of due process. *Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 38. " '[T]he starting point in any procedural due process analysis is a determination of whether one of these protectable interests is present, for if there is not, no process is due.' " *C.Capp's LLC v. Jaffe*, 2014 IL App (1st) 132696, ¶ 25 (quoting *Polyvend, Inc. v. Puckorius*, 77 Ill. 2d 287, 294 (1979)). Whether a party's procedural due process rights have been violated presents a legal question reviewed *de novo*. *Village of Vernon Hills*, 2015 IL 118170, ¶ 31.

¶ 41    Plaintiffs assert that the State allowed a "bypass system" for obtaining a dealer license that damages their interest in the "established franchise system."

¶ 42    As noted, in opposing a motion to dismiss under section 2-615, a plaintiff cannot rely on conclusions of law or fact unsupported by specific factual allegations. *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 52 (2001). The trial court correctly observed that plaintiffs' references to a "bypass system" and "established franchise system" lack a legal basis. Plaintiffs are not required by statute to operate as franchises; this business method is voluntary, and no protectable property interest arises from it. Furthermore, Rivian and Lucid have not created a "bypass system" but adopted a different business model used by other manufacturers.

¶ 43    Furthermore, even if plaintiffs had a property interest in their franchise arrangements, they were not deprived of that interest. Their licenses remain intact, and they continue to do business as new motor vehicle dealers. Although newly licensed motor vehicle dealers, whether manufacturers or additional franchises may affect market share and profits, freedom from

competition does not constitute a constitutionally protected interest. *Roosevelt-Wabash Currency Exchange, Inc. v. Fornelli*, 49 Ill. App. 3d 896, 902 (1977) ("well established that freedom from lawful competition is not constitutionally protected").

¶ 44                                   Equal Protection

¶ 45        Plaintiffs argue they properly alleged a violation of their equal protection rights.

¶ 46        As a preliminary matter, we address the Secretary's contention that because the trial court did not consider this argument, the equal protection claim is not before us. We disagree. A trial court's reasoning does not bind us, and we may affirm on any basis supported by the record, regardless of whether the trial court's decision considered it. *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 11; see *Kubicheck v. Traina*, 2013 IL App (3d) 110157, ¶ 28 n.3 ("we review the trial court's judgment, not its rationale, and we may affirm on any basis that the record supports").

¶ 47        Moving on to the merits, the "equal protection clause guarantees that similarly situated individuals will be treated in a similar manner, unless the government can demonstrate an appropriate reason to treat those individuals differently." *In re M.A.*, 2015 IL 118049, ¶ 24. The threshold question involves whether the party bringing an equal protection claim "is similarly situated to the comparison group." *Id.* ¶ 25. Plaintiffs insist they are similarly situated with Rivian and Lucid as all have a license to sell new vehicles but are treated differently.

¶ 48        We disagree with plaintiffs. Even if they are similarly situated with Rivian and Lucid, they failed to allege disparate treatment. The complaint alleged that "permitting the Bypass System would result in arbitrary, capricious, and unjustifiable economic discrimination in favor of" Rivian and Lucid and against the franchised dealerships. As mentioned, in opposing a motion under section 2-615, a plaintiff cannot rely on conclusions of law or facts unsupported by

specific factual allegations. *Jackson*, 197 Ill. 2d at 52. As we have stated, plaintiffs allege a legal conclusion they have been economically discriminated against and the claim lacks specific factual allegations. Thus, plaintiffs have failed to state a claim.

¶ 49        Affirmed.

*Illinois Automobile Dealers Ass'n v. Office of the Illinois Secretary of State*,
**2024 IL App (1st) 230100**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-CH-1438; the Hon. David B. Adkins, Judge, presiding. |
| **Attorneys for Appellant:** | John S. Elias and Janaki Nair, of Elias, Meginnes & Seghetti, P.C., of Peoria, Michael T. Reagan, of Ottawa, and Ira M. Levin, Eric P. Vanderploeg, Danielle J. Gould, Victoria R. Collado, and Brittany A. Martin, of Burke, Warren, MacKay & Serritella, P.C., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Evan Siegel, Assistant Attorney General, of counsel), for appellee Illinois Secretary of State. |
| | David M. Friebus, of BakerHostetler LLP, of Chicago, Andew M. Grossman, of BakerHostetler LLP, of Washington, D.C., and Billy M. Donley and David R. Jarrett, of BakerHostetler LLP, of Houston, Texas, for other appellees. |